# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JENE B. ELDER, *et al.* individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>RELIANCE WORLDWIDE CORPORATION, a Delaware Corporation and HOME DEPOT U.S.A., INC., a Delaware Corporation,<br><br>      Defendants. | CASE NO.: 1:20-CV-01596-AT<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF CLASS NOTICE**<br><br>The Honorable Amy Totenberg |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that Plaintiffs Clark Moore, Jimmy Wadlington, John Choate, Randy Marquardt, Jene Elder, Warren Kuiper, and Kristen Montag ("Plaintiffs"), on behalf of a proposed Settlement Class, as defined in the proposed Class Action Settlement Agreement and Release fully executed December 14, 2023, hereby move for an order (1) granting preliminarily approval of the Settlement and directing notice to the Class under Fed. R. Civ. P. 23(e)(1); (2) appointing Tina Wolfson of Ahdoot & Wolfson, PC, and Stephanie A. Casey of Colson Hicks Eidson PA, as class counsel under Fed. R. Civ. P. 23(g)(3); and (3) scheduling a final approval hearing under Fed. R. Civ. P. 23(e)(2).

As discussed in the attached Memorandum of Points and Authorities, the Parties negotiated an excellent Settlement that provides Class Members relief for all potential damages stemming from the allegations. They have a choice to receive a cash reimbursement for the replacement of up to two Water Heater Connectors per household or structure or up to two new replacement Water Heater Connectors per household or structure, plus reimbursement for property damage caused by failures of the Water Heater Connectors, including time incurred to remedy the damage. The parties negotiated the Settlement at arms' length after robust discovery when they had the necessary information to evaluate the risks of continued litigation.

1

The proposed Notice Program, which includes direct mail notice, direct email notice, and an Internet media campaign that includes social media and a settlement website, fulfills the requirements of Rule 23 and due process as the best notice practicable under the circumstances. Plaintiffs thus respectfully request that the Court grant preliminary approval, direct notice to the proposed Class, grant leave to file an amended complaint, and schedule a final approval hearing.

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY ........................................... 2

III.   SUMMARY OF SETTLEMENT TERMS ......................................................... 4

    A.   The Settlement Class Definition. ............................................... 4

    B.   Settlement Class Member Benefits. ............................................ 5

    C.   The Settlement's Notice Plan. .................................................... 7

    D.   Proposed Class Representative Service Awards. ....................... 8

    E.   Attorneys' Fees and Expenses. ................................................... 8

    F.   The Settlement Administrator. .................................................. 10

IV.    LEGAL STANDARD ................................................................................... 11

V.     ARGUMENT .............................................................................................. 13

    A.   The Settlement Satisfies the Criteria for Preliminary Approval. ........... 13

        1.   Class Representatives and Settlement Class Counsel Have Adequately Represented the Class. ................................. 13

        2.   The Settlements are the Product of Good-Faith, Informed, and Arm's Length Negotiations. ........................................ 15

        3.   The Settlement Provides Adequate Relief to Class Members. ......... 16

            a.   The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation. .................................................. 16

            b.   The Distribution of Settlement Benefits is Effective. ................. 17

            c.   Counsel will Seek Service Awards and Attorneys' Fees. ......... 18

            d.   There are no Undisclosed Side Agreements. ............................. 19

        4.   The Settlement Treats Class Members Equitably Relative to Each Other. ......................................................................... 19

    B.   Preliminary Approval of the Settlement Class is Appropriate. .............. 20

        1.   The Class Meets the Requirements of Rule 23(a). ........................... 21

            a.   The Class is Sufficiently Numerous. ......................................... 21

            b.   There Are Common Questions of Law and Fact. ...................... 21

c.    The Class Representatives' Claims Are Typical. ..................... 22

d.    The Class Representatives and Class Counsel Are More Than Adequate. ................................................................................. 23

2.    The Class Meets the Requirements of Rule 23(b). ......................... 24

a.    Common Issues of Law and Fact Predominate. ....................... 24

b.    Class Treatment is Superior. ..................................................... 25

3.    The Proposed Notice is the Best Practicable. ................................. 26

4.    Proposed Schedule for Notice and Approval. ................................. 28

VI.    CONCLUSION ................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Adams v. S. Farm Bureau Life Ins. Co.*,
   493 F.3d 1276 (11th Cir. 2007) ............................................................ 26

*Alabama v. Blue Bird Body Co.*,
   573 F.2d 309 (5th Cir. 1978) ............................................................... 25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................... 20, 26

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...................................................... 11, 12

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................ 10

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ............................................................ 24

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. 2007) ........................................................ 20

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...................................................... 15, 17

*Dusko v. Delta Air Lines, Inc.*,
   Case No. 1:20-cv-01664-ELR (N.D. Ga. Oct. 5, 2023) ...................... 19

*Fabricant v. Sears Roebuck*,
   202 F.R.D. 310 (S.D. Fla. 2001) ........................................................ 23

*Francisco v. Numismatic Guaranty Corp. of America*,
   No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ................. 15

*George v. Academy Mort'g Corp. (UT)*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) ............................................... 17

iii

*Giancola v. Lincare Holdings, Inc.*,
   No. 8:17-cv-2427, 2018 U.S. Dist. LEXIS 206631 (M.D. Fla. Dec. 7, 2018) ...... 9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................... 9

*In re Home Depot Inc.*,
   931 F.3d 1065 (11th Cir. 2019) ............................................... 9

*In re U.S. Oil and Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ............................................... 11

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ............................................. 18

*Kilgo v. Bowman Trans.*,
   789 F.2d 859 (11th Cir. 1986) ............................................... 21

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .............................................. 25

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) .............................................. 22

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................... 14

*Lunsford v. Woodforest Nat'l Bank*,
   No. 1:12-CV-103-CAP, 2014 WL 12740375 (N.D. Ga. May 19, 2014) .............. 10

*Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*,
   221 F.3d 1235 (11th Cir. 2000) .............................................. 23

*Melanie K. v. Horton*,
   2015 WL 1308368 (N.D. Ga. Mar. 23, 2015) ................................... 21

*Mitchell v. Allstate Vehicle & Property Ins. Co.*,
   2023 WL 5004064 (S.D. Ala. Aug. 3, 2023) ................................... 19

iv

*Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*,
  2019 WL 3956139 (N.D. Ga. Aug. 22, 2019)........................................................ 26

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................... 27

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) ............................................................................... 22

*Rosen v. J.M. Auto Inc.*,
  270 F.R.D. 675 (S.D. Fla. 2009)............................................................................. 22

*Tims v. LGE Community Credit Union*,
  Case No. 1:15-cv-04279-TWT (N.D. Ga. Nov. 29, 2023) ..................................... 19

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) ............................................................................. 27

*Venerus v. Avis Budget Car Rental, LLC*,
  No. 6:13-cv-921-CEM-GJK, 2023 WL 4673481 (M.D. Fla. May 25, 2023)........ 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................... 22

*Waters v. Int'l Precious Metals Corp*,
  190 F.3d 1291 (11th Cir. 1999) ............................................................................... 9

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ............................................................................. 21

*Wilson v. EverBank*,
  2016 WL 457011 (S.D. Fla. Feb. 3, 2016)............................................................. 16

## Other Authorities

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ........................................... 11

MANUAL FOR COMPLEX LITIGATION..................................................... 12, 20

**Rules**

Fed. R. Civ. P. 23 ......................................................................... 20, 27, 28

Fed. R. Civ. P. 23(a) ............................................................. 20, 21, 22, 23

Fed. R. Civ. P. 23(b) ....................................................... 20, 21, 24, 25, 26

Fed. R. Civ. P. 23(c) .............................................................................. 26

Fed. R. Civ. P. 23(e) ........................................... 11, 12, 13, 15, 16, 19, 26

Fed. R. Civ. P. 23(g) ....................................................................... 23, 24

Rule 30(b)(6) ................................................................................... 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Parties reached an excellent settlement that provides relief for every category of damage that class members may have incurred as a result of the allegations in this class action and now ask the Court to grant preliminary approval and direct that notice to the Class be disseminated.

This action concerns an alleged defect in certain Water Heater Connectors manufactured by Defendant Reliance Worldwide Corporation ("RWC"), which Plaintiffs contend contains a rubber lining that disintegrates and flakes, depositing rubber residue or a sludge-like substance in appliances, faucets, and shower heads connected to hot water lines.[1] These Water Heater Connectors are sold by Defendant Home Depot USA, Inc. ("Home Depot"). Plaintiffs and Defendants have reached a proposed Settlement that offers a cash reimbursement or replacement product, and reimburses for out-of-pocket property damages caused by failures of the Water Heater Connectors, including time incurred to remedy the damage.

The Settlement is the product of well-informed, arm's-length settlement negotiations—including two all-day mediation sessions and extensive further

---

[1] Unless otherwise defined, all capitalized terms herein have the meaning set forth in the Class Action Settlement Agreement and Release ("SA" or "Settlement"), filed concurrently herewith.

1

negotiations between experienced counsel facilitated by the Honorable William S. Duffey, retired U.S. District Judge of the Northern District of Georgia—that spanned over nine months. It arrives at a critical juncture in the litigation, after extensive motion practice and the close of fact discovery, but before the Plaintiffs and Class Members must face the risks of class certification and summary judgment proceedings. The Settlement presents an excellent recovery and delivers tangible and immediate benefits to the Settlement Class, particularly considering the substantial risks protracted litigation would present. The Court should grant preliminary approval.

## II.  BACKGROUND AND PROCEDURAL HISTORY

This action has been zealously litigated. Plaintiffs engaged in extensive pre-suit factual investigation and testing of the product with the aid of their retained experts. *See* concurrently filed Declarations of Tina Wolfson ("Wolfson Decl.") ¶ 7 and Stephanie A. Casey ("Casey Decl.") ¶ 10. They also supplied pictures, videos, and documentary evidence of the product failure to support their claims. *Id*. Following Plaintiffs' filing of a First Amended Complaint as a matter of right on August 3, 2020, adding plaintiffs and certain state law claims (Doc. 33), Defendants each moved to dismiss for failure to state a claim (Docs. 48, 49). On September 27, 2021, this Court entered an Order denying "in principal part" Defendants' motions to dismiss. (Doc. 63). In particular, the Court dismissed Plaintiffs' claim for breach of the implied

warranty of fitness for a particular purpose against Home Depot and Plaintiffs' consumer protection claims under the laws of Florida, New York, and Ohio; all other state law claims remained. (*Id.*)

The parties then engaged in extensive fact discovery. Wolfson Decl. ¶¶ 10-12; Casey Decl. ¶ 10-15. RWC and Home Depot produced over one hundred thousand pages of documents. Wolfson Decl. ¶ 12; Casey Decl. ¶ 13. The parties exchanged comprehensive interrogatories and requests for admissions and engaged in numerous disputes about written discovery and privilege issues. Wolfson Decl. ¶¶ 10-11; Casey Decl. ¶¶ 13-14. Plaintiffs deposed five witnesses from RWC, three witnesses from Home Depot, and one non-party witness (a former RWC employee). Wolfson Decl. ¶ 10; Casey Decl. ¶ 13. Defendants, in turn, deposed seven Plaintiffs and conducted inspections at three of the Plaintiffs' homes. *Id.* Additionally, the parties coordinated with their experts to dissect for inspection a failed Water Heater Connector taken from one of the Plaintiff's homes. *Id.*

In September 2022, the parties agreed to stay this case to allow them to focus on mediation; the Court permitted the entry of a stay to pending resolution of mediation. (Docs. 117, 118.)

On December 1, 2022, the Parties participated in an almost 12-hour in-person mediation session with the Honorable William S. Duffey, retired U.S. District Judge of the Northern District of Georgia. Wolfson Decl. ¶ 15; Casey Decl. ¶ 18. On

3

December 15, 2022, the parties conducted a second all-day in-person mediation with Judge Duffey. Wolfson Decl. ¶ 16; Casey Decl. ¶ 19. Thereafter, the parties continued negotiating both directly and with the assistance of Judge Duffey. *Id.* On June 9, 2023, as a result of intensive information exchange and negotiation, the parties reached an agreement-in-principle and executed a term sheet. Wolfson Decl. ¶ 17; Casey Decl. ¶ 20. The parties did not negotiate Class Counsel's attorneys' fees before reaching an agreement on the terms of relief for the Class. Wolfson Decl. ¶ 20; Casey Decl. ¶ 23. Class Counsel will move separately for attorneys' fees and costs, as well as service awards, as described below.

### III. SUMMARY OF SETTLEMENT TERMS

#### A. The Settlement Class Definition.

The proposed Settlement Class is defined as:

> All persons and entities who purchased for direct consumption or use and not for resale, a Water Heater Connector or who own, owned, lease or leased, a residence or other structure located in the United States during the time that such residence or structure contained a Water Heater Connector.

SA ¶ 42. "Water Heater Connector" means a braided stainless steel supply line containing an EPDM hose liner distributed by RWC and identified by Part Numbers beginning with "U3068FLEX" or "U3088FLEX". *Id.* ¶ 46. Excluded from the Class are: anyone who has already resolved their Water Heater Connector claims with any Released Party through settlement or final judgment; the Defendants and their

4

affiliates, but not their individual employees; anyone who purchased a Water Heater Connector solely for resale; anyone who already received a refund and/or replacement for their purchase; the presiding District Judge this action and her immediate family; and anyone who timely opts out. *Id.* ¶ 59.

### B.   Settlement Class Member Benefits.

The Settlement benefits are designed to provide Class Members with a remedy that is directly responsive to the harm they incurred.

First, all Class Members can receive up to two replacement Water Heater Connectors of the same type and size possessed by the Class Member up to two per household or structure, regardless of whether the Water Heater Connector in place in their home or structure has yet failed. SA ¶¶ 37, 113. The limit of two hoses per household or structure considers that water heaters require two connector hoses (one to carry water coming into the unit and one to carry water coming out of the unit). *See* concurrently filed Declaration of Mark W. Passameneck ("Passameneck Decl.") ¶ 5. Alternatively, the Class Members can elect to receive a cash reimbursement of $15 per replacement hose (up to $30 per household or structure). SA ¶¶ 37, 113.

The replacement remedy, by itself, represents an incredible value to the Class. RWC offers a two-year warranty for repair or replacement of the Water Heater Connectors. Declaration of Christopher E. Stiner ("Stiner Decl.") ¶ 2, Ex. A. Water heater connectors are meant to be replaced each time a new water heater is installed.

Passameneck Decl. ¶ 5.  The average life of a water heater is seven years, meaning, on average, most Water Heater Connectors will also be in service for seven years. *Id.* ¶ 6. Nevertheless, all Water Heater Connectors are eligible for replacement, regardless of whether they have been in service for longer than the two-year warranty period or the seven-year average service period. The average retail price for a Water Heater Hose is greater than $15 with approximately seven million hoses still in service. Stiner Decl. ¶¶ 4-6. Therefore, a conservative estimate of the value of this relief alone is $105 million.

Second, those Class Members who establish with acceptable proof that they suffered property damage as a result of a failed Water Heater Connector will be reimbursed for that property damage, including up to four hours of time spent remedying the problem (if the owner or lessee chose to do it themselves rather than hiring a plumber). SA ¶¶ 15, 114. Based on historical evidence, it is anticipated that the number of supported property damage claims will be low.  Over the entire lifetime of the product prior to this lawsuit (between 2011 and 2021), RWC received 89 claims supported by evidence of damage attributable to a Water Hose Connector failure for a total amount of $44,351.53. Stiner Decl. ¶ 7, Ex. E. Based on this information counsel anticipates that the overwhelming majority of claims submitted will be for replacement of existing Water Heater Connectors with claims for damages extremely limited in number and amount. *Id*.

Claims for reimbursement will be paid out of a common fund of $3,800,000. SA ¶¶ 45, 60, 62. Payment of notice and settlement administration-related costs or expenses costs, as well as attorneys' fees and costs and service awards, awarded by the Court will be paid from the common fund. *Id.* Any money remaining in the fund after the payment of all valid claims, fees, costs, and other expenses, will be distributed to Habitat for Humanity as a *cy pres* distribution. *Id.*

## C. The Settlement's Notice Plan.

The proposed Notice forms are attached to the Settlement as Exhibits B (Long Form Notice), C (Email Notice), D (Post Card Notice), and E (Claim Form). An Email Notice (*id.*, Ex. C) will be sent to all identified Settlement Class Members for whom a valid email address is available. A Long Form Notice (*id.* Ex. B) will be delivered as a link via e-mail, together with the Email Notice, and a Post Card Notice (*id.* Ex. D) will be delivered by U.S. mail to Class Member addresses for whom Defendants have such information. SA ¶ 74; Declaration of Cameron R. Azari ("Azari Decl.") ¶¶ 15-19 (attached as Exhibit F of the Settlement Agreement). Notice will also be disseminated via digital media in a manner specifically designed to reach Class Members. Azari Decl. ¶¶ 20-24; SA ¶ 74. The Settlement Website (www.connector_settlement.com), will communicate all important information, deadlines, and the Long Form Notice. Azari Decl. ¶ 25. This website also will allow for electronic submission of Claim Forms and have relevant Motions, Orders, and pleadings available for download. *Id.*

7

Additionally, a toll-free telephone number, email, and physical mailing address will be made available for Class Members to contact the Settlement Administrator or Class Counsel directly. SA ¶¶ 69, 74; Azari Decl. ¶¶ 26-27. The costs of Notice will be paid out of the Settlement Fund. SA ¶ 72. The Notice Plan is the best practicable notice under the circumstances and meets all due process requirements. Azari Decl. ¶¶ 10-12.

### D.   Proposed Class Representative Service Awards.

Plaintiffs have been dedicated and active participants in this litigation. Wolfson Decl. ¶¶ 30-31; Casey Decl. ¶¶ 33-34. They assisted in the investigation of the facts and remained in contact with counsel throughout the litigation. *Id*. Plaintiffs spent significant time responding to extensive and broad discovery served by Defendants, and willingly disrupted their lives to preserve and collect evidence. *Id* . They also made themselves available for deposition and submitted their homes to inspection. *Id.*. The Plaintiffs put their names and reputations on the line for the sake of the Class, and took on the additional significant stress of litigation. The Class recovery here would not have been possible without their efforts. In view of these efforts, Plaintiffs will petition the Court for approval of a $5,000 Service award each. SA ¶ 63.

### E.   Attorneys' Fees and Expenses.

Class Counsel may request reasonable attorney's fees and reimbursement of litigations costs of up to $2,300,000, which represents 2.2% percent of the total benefit being made available to the class.  Class Counsel will move for fees, expenses, and

8

service awards within 15 days following the Preliminary Approval Order, so it is available to the Class on-line before the objection/opt-out deadline.

"Courts calculate attorney's fees using one of two methods: the percentage method or the lodestar method." *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019). "Under the percentage method, courts award counsel a percentage of the class benefit." *Id.* "The class benefit generally includes any benefits resulting from the litigation that go to the class." *Id.* "In this Circuit, courts typically award between 20–30%, known as the benchmark range." *Id.*[2]

"Under the lodestar method, courts determine attorney's fees based on the product of the reasonable hours spent on the case and a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The product is known as the lodestar. Sometimes courts apply to the lodestar a multiplier, also known as an enhancement or an upward adjustment, to reward counsel on top of their hourly rates. *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019).

---

[2] The Eleventh Circuit is clear that attorneys' fees are calculated on the benefits made available, even if not all Class Members submit claims and receive the payment to which they are entitled. *See, e.g., Waters v. Int'l Precious Metals Corp*, 190 F.3d 1291, 1295 (11th Cir. 1999) (approving fee of 33 1/3% of total fund and rejecting argument that fees should have been calculated based on actual payout); *Giancola v. Lincare Holdings, Inc.*, No. 8:17-cv-02427, 2018 U.S. Dist. LEXIS 206631, at *7 (M.D. Fla. Dec. 7, 2018) ("In the Eleventh Circuit, fee awards…are calculated as a reasonable percentage of the total value of the settlement benefits made available to the class, rather than the claims rate or the actual payout.").

A common-fund case is when "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Lunsford v. Woodforest Nat'l Bank*, 1:12-CV-103-CAP, 2014 WL 12740375, at *11 (N.D. Ga. May 19, 2014).The instant case is such case a requiring the use of the percentage method; however, the proposed $2.3 million for fees and costs to Class Counsel is reasonable under either analysis.

A conservative estimate of the value of the Water Heater Connector replacement to the class alone is $105 million, making the proposed $2.3 million for fees and costs only 2.2% of the benefit to the Class, well below this Circuit's benchmark rate. As well, to date Class Counsel has expended $3,087,590 in fees and costs. The proposed $2.3 million in fees and costs would entail applying a negative multiplier of 0.75 to their lodestar.

### F.   The Settlement Administrator.

The Parties propose that Epiq—an experienced and reputable national class action administrator—serve as Settlement Administrator to provide notice, administer the claims process, and provide other services necessary to implement the Settlement. SA ¶¶ 3, 39, 75; *see generally* Azari Decl. Settlement Administration Expenses will be paid out of the Settlement Fund. SA ¶ 62.

10

Epiq was selected after a competitive bidding process led by Class Counsel. Wolfson Decl. ¶ 22; Casey Decl. ¶ 25. Class Counsel considered proposals from two other potential administrators. *Id.* Class Counsel—who have collectively litigated hundreds of class actions to settlement—previously have worked with Epiq, the two other bidders, as well as other professional administrators. Wolfson Decl. ¶ 22; Casey Decl. ¶ 25. The estimated $450,000 cost for settlement administration is reasonable. Wolfson Decl. ¶ 22.

## IV.  LEGAL STANDARD

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

The purpose of preliminary evaluation of proposed class-action settlements is to determine whether the settlement is within the "range of reasonableness." 4 NEWBERG ON CLASS ACTIONS § 11.26 (4th ed. 2002). Settlements reached as a result of arm's length, informed negotiations with the aid of experienced counsel support a preliminary finding of fairness. *See* MANUAL FOR COMPLEX

LITIGATION, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation omitted).

When determining whether a settlement is ultimately fair, adequate, and reasonable, Rule 23(e)(2) instructs courts to consider whether: (1) "the class representatives and class counsel have adequately represented the class; [(2)] the proposal was negotiated at arm's length; [(3)] the relief provided for the class is adequate[;] and [(4)] the proposal treats Class Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Additionally, courts in this Circuit have looked to: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. All of these factors support preliminary approval of the Settlement.

Finally, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an application by the Parties and may conduct any hearing in court or in chambers, at the Court's discretion. *See* MANUAL FOR COMPL. LITIG. § 13.14.

V.   A<small>RGUMENT</small>

A.   **The Settlement Satisfies the Criteria for Preliminary Approval.**

Rule 23(e)(2) states that a district court should approve a proposed settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats Class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement satisfies each of the criteria under Rule 23(e)(2). Preliminary approval of the proposed Settlement and notice to the proposed class is appropriate.

1. **Class Representatives and Settlement Class Counsel Have Adequately Represented the Class.**

Rule 23(e)(2)(A) considers whether "the class representatives and class counsel have adequately represented the class." In evaluating Class Representatives' and Class Counsel's adequacy, courts consider whether Class Counsel and Plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *See* Rule 23(e)(2)(A) advisory committee's note to 2018 amendment. Courts thus consider

the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

Class Counsel and Class Representatives have adequately represented the Class in this litigation and the Settlements. Class Counsel zealously represented their clients' interests through vigorous litigation, and then settlement negotiations, over the course of three years. Wolfson Decl. ¶¶ 7, 9-21; Casey Decl. ¶¶ 10-25. Class Counsel defeated dispositive motions brought by each Defendant, conducted fulsome discovery to investigate the facts of the case, and retained appropriate experts to assist them in developing the claims and evaluating the defenses in the case. *Id*. The Class Representatives were likewise actively engaged in the litigation. Wolfson Decl. ¶¶ 30-31; Casey Decl. ¶¶ 33-34. They each provided relevant documents and materials, they sat for depositions, and permitted inspection of their homes, where appropriate. *Id*.

In negotiating the Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of the case. Wolfson Decl. ¶¶ 36-52; Casey Decl. ¶ 3-4, 9, 27. Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and Defendants' defenses and engaged in extensive formal discovery, including reviewing thousands of pages of documents, taking or defending a total of 16 depositions, including taking Rule 30(b)(6) corporate representative

depositions of the Defendants. Wolfson Decl. ¶ 10; Casey Decl. ¶¶ 10-15.   Class Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the case and prepared counsel for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two Rule 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### 2. The Settlements are the Product of Good-Faith, Informed, and Arm's Length Negotiations.

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." And courts have noted that a class-action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class-action litigation and with the legal and factual issues of this case. The Parties engaged in extensive, adversarial negotiations over several mediation sessions with an experienced retired federal judge from this District, Judge Duffey. Wolfson Decl. ¶¶ 14-18; Casey Decl. ¶¶ 18-21. A

15

settlement process facilitated by a mediator weighs heavily in favor of approval. *See Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) ("The very fact of [mediator's] involvement—let alone his sworn declaration—weights in favor of approval."); Adv. Cmte. Note ("involvement of a neutral…mediator…in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). The 12-months long Settlement negotiation process was so adversarial that it appeared to break down in several instances and the parties were on the brink of returning to litigation. This Settlement was achieved in a procedurally fair manner and in the absence of collusion.

### 3. The Settlement Provides Adequate Relief to Class Members.

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate," considering several factors, including the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorneys' fees, and any other agreements between the parties. The replacement remedy and other monetary benefits of the Settlement are substantial and more than adequate.

### a. The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation.

Rule 23(e)(2)(C)(i) instructs courts to consider whether the costs, risks, and delay of trial and appeal militate toward a finding that a settlement provides adequate relief to the class. When evaluating "the terms of the compromise in relation to the

likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

While Plaintiffs and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Defendants, as well as the risks and delays inherent to litigation. Defendants raised numerous defenses to liability and damages, including claiming that the Water Heater Connector has a low failure rate. Plaintiffs expect Defendants would vigorously oppose class certification, challenge Plaintiffs' damages theories, and provide their own experts. Even if a class were certified and upheld on appeal, it would face the risk, expense, and delay of trial and potentially lengthy appellate process, further delaying any recovery for years. Plaintiffs and Class Counsel appropriately determined that the Settlements reached with Defendants outweigh the risks of continued litigation. *See George v. Academy Mort'g Corp. (UT)*, 369 F. Supp. 3d 1356, 1371 (N.D. Ga. 2019) (settlement a "fair compromise" given risks and "certainty of substantial delay").

### b.  The Distribution of Settlement Benefits is Effective.

The Settlement ensures that Class Members can replace their Water Heater Connectors, either by obtaining a replacement hose or by accepting a cash reimbursement, and allows Class Members who suffered property damage to be

17

reimbursed for those costs. The benefits will be distributed via a simple claims process. Each Class Member will receive information about the Settlement via the proposed Notice Plan (postcard, email, and/or by a robust targeted media campaign). Class Members will submit a Claim Form and supporting documents online or by mail. After reviewing a claim for completeness and eligibility, the Settlement Administrator will mail a check or send money electronically.

### c. Counsel will Seek Service Awards and Attorneys' Fees.

The parties did not negotiate Class Counsel's attorneys' fees or Plaintiffs' service awards before reaching an agreement on the terms of relief for the Class, and no agreement on these issues has been reached at this time. Wolfson Decl. ¶ 34; Casey Decl. ¶ 23; *see Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (finding that settlement not collusive where "the fee was negotiated separately from the rest of the settlement, and only after substantial components of the class settlement had been resolved").  There is no free sailing provision and Defendant is free to oppose both fees and service awards.  Class Counsel intend to request reasonable attorney's fees and reimbursement of litigations costs of up to $2,300,000, which represents 2.2% percent of the total benefit being made available to the class. Class Counsel also intend to seek service awards totaling no more than $35,000, which represents $5,000 per Plaintiff.  Wolfson Decl. ¶ 35; Casey Decl. ¶ 36.  Courts in this Circuit have held that service awards are permissible in diversity cases where governing state law permits

incentive awards. *See, e.g.*, *Mitchell v. Allstate Vehicle & Property Ins. Co.*, 2023 WL 5004064 at *6 (S.D. Ala. Aug. 3, 2023); *Venerus v. Avis Budget Car Rental, LLC*, Case No. 6:13-cv-921-CEM-GJK, 2023 WL 4673481 at *2-3 (M.D. Fla. May 25, 2023); *Dusko v. Delta Air Lines, Inc.*, Case No. 1:20-cv-01664-ELR (N.D. Ga. Oct. 5, 2023) (Doc. 110, at 24-25); *Tims v. LGE Community Credit Union*, Case No. 1:15-cv-04279-TWT (N.D. Ga. Nov. 29, 2023) (Doc. 203, at 2). Class Counsel will move for fees, expenses and service awards within 15 days following the Preliminary Approval Order, so it is available to the Class on-line before the objection/opt-out deadline.

### d.  There are no Undisclosed Side Agreements.

There is no other agreement between the parties that is required to be identified by Rule 23(e)(3), or any agreement made in connection with the Settlement that is not part of the Settlement. The Court can, therefore, determine the fairness and adequacy of the Parties' proposal for settlement by looking solely to the Settlement.

### 4.  The Settlement Treats Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) considers "whether the apportionment of relief among Class Members take[s] appropriate account of differences among their claims," *see* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment. The Settlement does so. Each Class Member can replace their Water Heater Connectors, either by choosing to receive a replacement hose or by accepting a cash reimbursement. Additionally, each Class Member who suffered property damage can seek reimbursement for those costs.

19

As the claims of all Class Members are otherwise identical and arise from the same conduct, there are no other pertinent differences for which to account.

As discussed above, Class Counsel intend to request service awards for the Class Representatives. However, no Plaintiff was promised, nor conditioned their representation on the expectation of, a service award. Wolfson Decl. ¶ 35; Casey Decl. ¶ 36.

### B.   Preliminary Approval of the Settlement Class is Appropriate.

Where a class has not been certified prior to settlement, the Court must also consider the prospect of class certification in determining whether to direct notice to the class. *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 553 (N.D. Ga. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) ("In order to certify the settlement class, the Court must examine whether the settlement class complies with Rule 23…[and] engage in an independent analysis to determine whether plaintiffs' proposed settlement class complies with Rule 23(a) and (b)."). While the ultimate decision on class certification is not made until the final approval hearing, preliminary certification of a class for settlement purposes permits notice of the proposed settlement to issue to the classes to inform class members of the existence and terms of the proposed settlement, of their right to be heard on the settlement's fairness, of their right to opt out, and of the date, time, and place of the fairness hearing. *See* MANUAL FOR COMPL. LITIG., §§ 21.632, 21.633.

For the reasons set forth below, certification is appropriate under Rules 23(a) and (b)(3).

### 1. The Class Meets the Requirements of Rule 23(a).

#### a. The Class is Sufficiently Numerous.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). In the last seven years approximately 7 million Water Heater Connectors were sold in the United States. Stiner Decl. ¶¶ 4-6. Each water heater unit requires two connectors; thus, it is estimated that the potential class may include up to 3.5 million individuals. Passameneck Decl. ¶ 5. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of millions of consumers throughout the United States, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

#### b. There Are Common Questions of Law and Fact.

"To satisfy the commonality requirement, Plaintiffs must show that questions of law or fact are common to the entire class." *Melanie K. v. Horton*, 2015 WL 1308368, at *4 (N.D. Ga. Mar. 23, 2015). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1354 (11th Cir. 2009). Here, the central issues in this case concern common questions of fact: *i.e.*, whether there is a

21

common defect in the Water Heater Connector and Defendants' knowledge and alleged omissions regarding the alleged defect. *See* Am. Compl. ¶ 126. These common questions will, in turn, generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### c.   The Class Representatives' Claims Are Typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are coextensive with those of the absent Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

Here, Plaintiffs allege the existence of a common defect in the Water Heater Connector's rubber lining, and Plaintiffs each purchased a Water Heater Connector or owned or leased a home in which the Water Heater Connector was used and did not know about the alleged defect in the product. *See* Am. Compl. ¶¶ 50-56, 70-100, 126-127; *see also Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 682 (S.D. Fla. 2009) (plaintiff

typical because he alleges same car defect as rest of class). Plaintiffs are typical of absent Class Members because they were subjected to the same conduct and claim to have suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

### d. The Class Representatives and Class Counsel Are More Than Adequate.

Adequacy under Rule 23(a)(4) considers (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001); *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (quotation omitted). Rule 23(g) requires this Court to appoint class counsel to represent the Class.

Plaintiffs and their counsel also satisfy the adequacy-of-representation requirement. Plaintiffs' interests are not antagonistic to the interests of the Class. Plaintiffs and absent Class Members have a coextensive interest in obtaining the relief offered by the Settlement, and absent Class Members have no diverging interests. Plaintiffs are familiar with the facts of this case and will continue to protect the Class, as they have throughout this litigation. Further, Plaintiffs are represented by qualified and competent counsel with experience prosecuting class actions. Class Counsel have devoted substantial time and resources to vigorous litigation of this action from inception through the date of the Settlement. They respectfully request appointment as

Settlement Class Counsel under Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

### 2.   The Class Meets the Requirements of Rule 23(b).

In this case, "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.   Common Issues of Law and Fact Predominate.

"Predominance" under Rule 23(b)(3) is satisfied where common issues have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016).

Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Class Member. The evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and all members of the Class: they would all seek to prove that the Water Heater Connectors have a common defect, Defendants knew of the defect, and Defendants omitted or failed to warn consumers of the defect. Further, the evidence to establish liability—e.g., Defendants' marketing

materials, testing materials, internal communications about the product, product labels, and evidence of the defect—would change little regardless of the number of plaintiffs in the class. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[I]f common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

### b.    Class Treatment is Superior.

"Superiority" looks to the "relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. Under Rule 23(b)(3), the Court considers a "non exhaustive list of four factors" in making its superiority determination: "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Id.*

The superiority factors weigh in favor of certification. As to the first two factors, Class Counsel are unaware of the existence of any other pending litigation concerning the Water Heater Connectors at issue here. Indeed, the damages sought by each Class

Member are small relative to the cost of prosecuting an individual claim, thus further supporting the superiority of class treatment in this case. *See Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*, 2019 WL 3956139, at *27 (N.D. Ga. Aug. 22, 2019) (superiority met where "amount of individual damages is likely to be relatively small). With respect to the third factor, this Court has been competently handling this matter in a forum (Georgia) that is the home jurisdiction of both Defendants. The final factor, manageability, does not apply here. *Amchem Prods.*, 521 U.S. at 620 ("a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial.").

In short, the resolution of thousands of claims in this action is far superior to individual lawsuits, as it will promote consistency and efficiency of adjudication.

### 3.   The Proposed Notice is the Best Practicable.

Where a class settlement is proposed, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. To satisfy due process, notice must "reach the parties affected" and "convey the required information." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-86 (11th Cir. 2007). For a Rule 23(b)(3) settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances…." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (quotation omitted).

The proposed Notice Plan meets these standards. The Parties created this proposed Notice Plan—including the content and the distribution plan—with Epiq, an experienced firm specializing in comprehensive noticed settlement management in complex class litigation. Azari Decl. ¶¶ 3-8. It includes a mailed notice, email notice, a media campaign, and a comprehensive Settlement Website that meets Rule 23's requirements. Azari Decl. ¶¶ 14-27.

As set forth in the Settlement and above, the Notice Plan will inform Class Members' rights and obligations in plain language. It includes an overview of the litigation; an explanation of the Settlement benefits and how to claim them; contact information for Class Counsel; the address of the comprehensive Settlement Website that will house links to key filings; and instructions on how to object or opt out. Azari Decl. ¶¶ 14-27. The principal method of reaching Class Members will be through individual postcard notices by U.S. first class mail and emails to all readily identifiable

Class Members. *Id*. As well, notice will also be provided through a robust targeted media campaign. *Id*.  This Notice Plan comports with the requirements under Rule 23. *Id*. ¶ 11. Therefore, the Court should approve the notice program and the form and content of the Notices appended as Exhibits B through D of the Settlement Agreement.

### 4.   Proposed Schedule for Notice and Approval.

In connection with preliminary approval, Plaintiffs request that the Court set a schedule for disseminating notice and a Final Approval Hearing. As set forth in their Notice Plan, Plaintiffs propose the following:

| Event | Deadline |
|---|---|
| Notice mailed to Class Members ("Notice Date") | 30 days after Court enters the Preliminary Approval Order |
| Settlement website available to Class Members | 30 days after Court enters the Preliminary Approval Order |
| Deadline to Object to or Opt Out of Settlement | 30 days prior to the Final Approval Hearing |
| Deadline to file Motion for Final Approval of Settlement | 40 calendar days before the Final Approval Hearing |
| Final Approval Hearing | At least 180 days after entry of Preliminary Approval Order |

Finally, at a Status Conference with the Court on September 15, 2023, the Court requested that the parties provide availability for a hearing on this Preliminary Approval Motion, should the Court require one. The parties respectfully submit that they are available on the following days for such a hearing: February 5-6, 12-13, 23, 2024.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the settlement; (2) direct notice to the Class; (3) appoint Tina Wolfson of Ahdoot Wolfson, PC, and Stephanie A. Casey of Colson Hicks Eidson PA, as class counsel; and (4) schedule the final approval hearing.

DATED: January 9, 2024                   Respectfully submitted,


                                         *s/ Christopher E. Stiner*

                                         Christopher E. Stiner
                                         California Bar No. 276033
                                         cstiner@adhootwolfsom.com
                                         Tina Wolfson
                                         California Bar No. 174806
                                         twolfson@adhootwolfsom.com
                                         **AHDOOT & WOLFSON, PC**
                                         2600 W. Olive Avenue, Suite 500
                                         Burbank, CA 91505
                                         Telephone: (310) 474-9111
                                         Facsimile: (310) 474-8585


                                         Stephanie A. Casey
                                         Florida Bar No. 97483
                                         scasey@colson.com
                                         Aziza F. Elayan
                                         Florida Bar No. 92736
                                         aziza@colson.com
                                         Sabrina Saieh
                                         Florida Bar No. 125290
                                         sabrina@colson.com
                                         **COLSON HICKS EIDSON**
                                         255 Alhambra Circle, Penthouse
                                         Coral Gables, Florida 33134

Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

Andrea Hirsch (GA Bar No. 666557)
andrea@thehirschlawfirm.com
**THE HIRSCH LAW FIRM**
5256 Peachtree Road, Suite 195D
Atlanta, Georgia 30341
Telephone: 404-487-6552
Facsimile: 678-541-9356

## CERTIFICATE OF RULE 5.1(C) COMPLIANCE

I hereby certify that this document was prepared with Times New Roman 14-point font, one of the fonts and type sizes approved by Local Rule 5.1(c).

*/s/ Christopher E. Stiner*
Christopher Stiner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Christopher E. Stiner*
Christopher Stiner