### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JENE B. ELDER, *et al.* individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>RELIANCE WORLDWIDE CORPORATION, a Delaware Corporation and HOME DEPOT U.S.A., INC., a Delaware Corporation,<br><br>        Defendants. | CASE NO.: 1:20-CV-01596-AT |

### AMENDED CLASS ACTION SETTLEMENT
### AGREEMENT AND RELEASE[1]

Plaintiffs, Clark Moore, Jimmy Wadlington, John Choate, Randy Marquardt, Jene Elder, Warren Kuiper, and Kristen Montag (collectively, "Plaintiffs"), who are acting as the Settlement Class Representatives on behalf of themselves and all other Settlement Class Members of the Settlement Class set forth herein, on the one hand, and Defendants Reliance Worldwide Corporation ("RWC") and Home Depot U.S.A., Inc. ("Home Depot," and together with RWC, the "Defendants"), on the other hand, stipulate and agree, pursuant to the terms and conditions set forth in this

---

[1] This amendment is the result of additional agreements reached between the parties following a telephone conference with United States District Judge Amy Totenberg that took place on February 7, 2024.

Class Action Settlement Agreement and Release, to settle, dismiss, and compromise fully and finally the claims against Defendants for alleged defects in and failures of certain RWC Water Heater Connectors (as defined herein) distributed and/or sold by RWC as alleged in *Elder, et al. v. Reliance Worldwide Corporation and Home Depot U.S.A., Inc.*, Case No. 1:20-cv-01596-AT [ECF No. 33].

## DEFINED TERMS

As used in this Agreement, as well as in the notices and other documents contemplated by this Agreement, and any amendments thereto, the following terms have the meanings set forth below.  Terms used in the singular shall be deemed to include the plural and vice versa.

1.    "**Agreement**" means this Class Action Settlement Agreement and Release, including the notices and other documents attached as exhibits to this Agreement, and any amendments thereto.

2.    "**Claimant**" means a Settlement Class Member (including the Class Representatives) tendering a Claim Form and seeking a Damages Remedy or a Replacement Remedy from the Common Fund under the terms of this Agreement, including any person or entity entitled to make a settlement claim on behalf of a Settlement Class Member to the extent permissible by law or this Agreement.

3.    "**Claims Administrator**" means, subject to Court approval, Epiq Global, unless another third-party administrator is later agreed to by the Parties in

writing and approved by the Court, who shall administer the claims process provided for in paragraphs 106 to 112 of this Agreement. This Person or one of its affiliated companies may be the same as the Notice Provider. If so, these terms are utilized interchangeably herein.

4.      "**Claim Form**" means the form approved by the Court for use by the Settlement Class Members in making claims, substantially in the form attached hereto as Exhibit E.

5.      "**Claims Period**" means the period of time for Settlement Class Members to file a Claim Form. Claim Forms must be submitted within the applicable Damages Claims Period or Replacement Claims Period.

6.      "**Class Action**" means and refers to the putative class action lawsuit filed in the United States District Court for the Northern District of Georgia as *Elder, et al. v. Reliance Worldwide Corporation and Home Depot U.S.A., Inc.*, Case No. 1:20-cv-01596-AT.

7.      "**Class Counsel**" means Ahdoot & Wolfson, PC and Colson Hicks Eidson.

8.      "**Class Representatives**" means Plaintiffs and proposed settlement class representatives Clark Moore, Jimmy Wadlington, John Choate, Randy Marquardt, Jene Elder, Warren Kuiper, and Kristen Montag, individually and on behalf of all Settlement Class Members.

9.    "**Co-Lead Class Counsel**" means Tina Wolfson of Ahdoot & Wolfson, PC and Stephanie Casey of Colson Hicks Eidson PA.

10.    "**Common Fund**" means and refers to the sum of $3,800,000, which represents the full amount of any payment obligations by RWC and Home Depot on behalf of themselves and all Released Parties including, without limitation, all amounts to be paid for Settlement Notice pursuant to the Notice Plan, administration costs/expenses of the Claims Administrator and/or Notice Provider, legal costs/expenses of Plaintiffs' Counsel (including, without limitation, any attorneys' fee award/judgment), Replacement Claims and Damages Claims, except only that the cost of Water Heater Connectors that RWC supplies for any approved Replacement Claim shall be on top of and in addition to the Common Fund.

11.    "**Complaint**" means the First Amended Class Action Complaint for Injunctive Relief and Damages filed by Plaintiffs in *Elder, et al. v. Reliance Worldwide Corporation and Home Depot U.S.A., Inc.*, Case No. 1:20-cv-01596-AT [ECF No. 33].

12.    "**Counsel for RWC**" means Eva M. Spahn, Esq., Mark A. Salky, Esq., and Keith E. Smith, Esq., of Greenberg Traurig, LLP.

13.    "**Counsel for Home Depot**" means S. Stewart Haskins II, Esq., J. Andrew Pratt, Esq., and Billie B. Pritchard, Esq., of King & Spalding LLP.

14.    "**Court**" shall mean the United States District Court for the Northern

District of Georgia, in which *Elder, et al. v. Reliance Worldwide Corporation and Home Depot U.S.A., Inc.*, Case No. 1:20-cv-01596-AT, is pending.

15.     "**Damages Remedy**" means the remedy provided to Settlement Class Members from the Common Fund allowing for the recovery of reasonable damages subject to the proof requirements set forth in paragraph 115 below. The Claims Administrator shall have sole and complete discretion to determine the validity of any claim and the value of each claim based upon the information submitted.

16.     "**Damages Claims Period**" means the date of the preliminary approval until and including the 120th day after entry of the Preliminary Approval Order.

17.     "**Damages Settlement Amount**" means the Net Settlement Amount minus the total of any valid Replacement Claims for cash.

18.     "**Effective Date**" means one business day after the Court has entered its Final Approval Order and such order has become final upon the later of (1) the period within which to file an appeal has expired without the filing of any appeal, or (2) in the event that an appeal from the Final Approval Order is filed, a final order has been entered disposing of the appeal and any time for seeking leave to appeal or time for further appeal has expired.

19.     "**Excluded Persons**" are those persons or entities described in paragraph 61.

20.    "**Final Order and Judgment**" means the Final Order and Judgment of the Court approving the settlement provided for in this Agreement.

21.    "**Final Approval Hearing**" means the hearing conducted by the Court in connection with the determination of the fairness, adequacy, and reasonableness of this Agreement under Rule 23 of the Federal Rules of Civil Procedure.

22.    "**Home Depot**" means Home Depot U.S.A., Inc.

23.    "**Net Settlement Amount**" means the Total Settlement Amount minus any amounts paid to the Claims Administrator for notice and administration costs, any amounts awarded to Class Counsel for attorneys' fees and costs, and any amounts awarded to Plaintiffs as Service Awards.

24.    "**Notice Date**" means the date on which the Notice Provider has begun implementation of the Notice Plan approved by the Court in the Preliminary Approval Order, which shall not be later than 30 days after the Court's entry of the Preliminary Approval Order, unless otherwise ordered by the Court.

25.    "**Notice Plan**" has the meaning ascribed to it in paragraphs 73 to 85.

26.    "**Notice Provider**" means the Claims Administrator or its designee who is appointed by the Court to administer the Notice Plan.

27.    "**Objection Deadline**" means the date set by the Court for Settlement Class Members to deliver written notice regarding their objections to this Agreement or intent to be heard at the Final Approval Hearing. All objections must be in the

form prescribed by the Court, must contain the information required in paragraphs 91 to 94, and must be filed with the Court or served on the Claims Administrator at least 30 days prior to the date set in the Preliminary Approval Order for the Final Approval Hearing, unless otherwise ordered by the Court.

28.    "**Opt Out Deadline**" means the date set by the Court for any Settlement Class Member to deliver written notice regarding their intention to opt out of this Agreement.  All requests for exclusion (*i.e.*, opt-outs) from the Settlement Class must be in the form prescribed by the Court, must contain the information required in paragraphs 86 to 89, and must be served on the Claims Administrator at least 30 days prior to the date set in the Preliminary Approval Order for the Final Approval Hearing.

29.    "**Opt Out Form**" means the form or letter by which Settlement Class Members may opt out of the Settlement Class pursuant to paragraphs 86 to 89.

30.    "**Plaintiffs**" means Clark Moore, Jimmy Wadlington, John Choate, Randy Marquardt, Jene Elder, Warren Kuiper, and Kristen Montag.

31.    "**Plaintiffs' Counsel**" means the law firms of Ahdoot & Wolfson, Colson Hicks Eidson, and the Hirsch Law Firm.

32.    "**Preliminary Approval Order**" means the Court's Order, as provided for in paragraph 71, which shall conditionally approve this Agreement between the Settlement Class, RWC, and Home Depot, conditionally certify a class

action for settlement purposes only, approve the Claims Administrator, approve the Settlement Notice, approve the Notice Plan, establish the Opt-Out and Objection Deadlines, and fix a hearing date for the Final Approval Hearing.

33.    "**Released Claims**" has the meaning ascribed to it in paragraphs 95 to 102.

34.    "**Released Parties**" has the meaning ascribed to it in paragraphs 95 to 102.

35.    "**Releasing Parties**" shall have the meaning ascribed to it in paragraphs 95 to 102.

36.    "**Replacement Claims**" means claims related to the replacement of a Water Heater Connector that was installed in a residence or other structure, regardless of whether the Water Heater Connector has failed.

37.    "**Replacement Claim Period**" means the date of the preliminary approval until and including the 120th day after entry of the Preliminary Approval Order.

38.    "**Replacement Remedy**" means the remedy provided to Settlement Class Members for either: (a) reimbursement of $15 per replacement Water Heater Connector, not to exceed two (2) replacement Water Heater Connectors per household or other structure (a maximum total of $30 per household), to be paid out of the Common Fund to all Claimants with valid claims; or (b) the Settlement

Administrator to ship up to two (2) replacement Water Heater Connectors (to be supplied by RWC) of the same type and size as the Water Heater Connector possessed by the Class Member. The Water Heater Connectors for any Replacement Remedy for those Class Members choosing product replacement instead of cash, shall by supplied by RWC at its own cost, without any amounts withdrawn for such Water Heater Connectors from the Common Fund, other than the cost of shipping the Water Heater Connectors from the Claims Administrator to the Claimant.

39.    **"RWC"** means Reliance Worldwide Corporation.

40.    **"Service Awards"** means the amount of remuneration to be paid to the Class Representatives, if any, in recognition of their efforts on behalf of the Settlement Class, in an amount to be ordered by the Court.

41.    **"Settlement Administrator"** means Epiq Global or its designated affiliated company acting as Claims Administrator and Notice Provider either directly or through one of its affiliated companies.

42.    **"Settlement Claim"** means a claim made by a Settlement Class Member.

43.    **"Settlement Class Members"** means all members of the Settlement Class.

44.    **"Settlement Class"** means all persons or entities who purchased for direct consumption or use and not for resale, a Water Heater Connector or who own,

owned, lease, or leased, a residence or other structure located in the United States during the time that such residence or structure contained a Water Heater Connector.

45.     "**Settlement Notice**" means the notice or notices required by the Notice Plan approved by the Court for providing notice of this Agreement as set forth in paragraphs 73 to 85.

46.     "**Settling Parties**" means RWC, Home Depot, and the Class Representatives, on behalf of themselves and the Settlement Class.

47.     "**Total Settlement Amount**" means the sum of $3,800,000, which will be paid into the Common Fund, which represents the full amount of any payment obligations by RWC, Home Depot, and any Released Party including, without limitation, all amounts to be paid for valid Damages Remedy and Replacement Remedy claims other than the replacement Water Heater Connectors supplied to the Settlement Administrator, notice, settlement administration (including the cost of shipping Replacement Remedy Water Heater Connectors), attorneys' fees, and expenses.

48.     "**Water Heater Connector**" means a braided stainless steel supply line containing an EPDM hose liner distributed by RWC and identified by Part Numbers beginning with "U3068FLEX" or "U3088FLEX".

## SUMMARY OF LITIGATION

49.     Plaintiffs and proposed Class Representatives filed a Complaint

seeking damages suffered by themselves and a putative nationwide class resulting

from the purchase, installation, inadequate instructions/warnings, failure, and/or

potential failure of allegedly defective Water Heater Connectors, as well as legal

costs/expenses (including an attorneys' fee award/judgment) and injunctive,

declaratory, and other equitable relief.

50.    Class Counsel have conducted a thorough investigation of the facts and

law relating to the matters set forth in the pleadings and have retained experts

necessary to assist the Settlement Class Members in pursuing these claims, reaching

this Agreement, and developing the claims process.

51.    Without conceding any lack of merit of any of their claims, Plaintiffs

and Class Counsel have concluded that it is in the best interests of the Settlement

Class to settle the Class Action on the terms set forth herein, and that the settlement

with RWC, Home Depot, and the Released Parties embodied in this Agreement is

fair, reasonable, adequate, and in the best interests of the Settlement Class.

52.    RWC and Home Depot deny any fault, wrongdoing, illegal conduct,

or liability whatsoever on their part, or any defect in the Water Heater Connectors,

and have asserted numerous defenses to the facts and causes of action alleged in the

Class Action. RWC and Home Depot also deny any and all allegations of fault,

wrongdoing, defect, or liability made by any party in other actions or claims asserted

against them concerning the Water Heater Connectors. RWC and Home Depot rely

on the provisions of this Agreement that the settlement embodied herein shall not be construed as or deemed to be evidence of an admission or a concession on the part of RWC and/or Home Depot of any fault, wrongdoing, or liability whatsoever, or of any defect in the Water Heater Connectors that any of the allegations in the Complaint or any similar litigation are true. Without conceding any lack of merit in their defenses, RWC and Home Depot consider it desirable to enter into this Agreement to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding in the Class Action and similar cases.

53.    Throughout this litigation, RWC and Home Depot raised, and continue to raise, defenses that could have precluded all recovery for Settlement Class Members if RWC and Home Depot ultimately succeeded on those defenses.

54.    Without conceding any lack of merit of any of their defenses or arguments, RWC and Home Depot have concluded that it is in their best interest to settle the differences, disagreements, and suits upon the terms and conditions set forth below, and in so doing, do not admit, concede, or imply that they have done anything wrong or legally actionable, or that the allegations of deficiencies in the Water Heater Connectors have merit.

55.    In addition to the representations above, the Settling Parties further agree that the positions as stated herein form the basis for this settlement and are

integral to the Agreement.

56.     The Settling Parties disagree about the rights, obligations, benefits, and detriments that each of them has or may have as set forth in the claims brought in the Class Action.

57.     The Settling Parties have engaged in extensive, difficult, complex, and arm's-length negotiations regarding the settlement of claims involving the Water Heater Connectors.  There was no certainty or assurance of a settlement. The Settling Parties conducted extensive discovery, including RWC's and Home Depot's production of over one hundred thousand pages of documents, sixteen (16) depositions, and engaged in numerous disputes about written discovery and privilege assertions.

58.     The settlement was finally achieved after multiple mediation sessions with Honorable William S. Duffey (Ret.). The Settling Parties also had substantial settlement negotiations following the mediation sessions with Judge Duffey that have ultimately culminated in this Agreement.

59.     The Settling Parties desire and intend by this Agreement to settle finally and completely, and effectuate a final resolution of, all claims of all Settlement Class Members, whether asserted or not in the Class Action, to establish a claims process, and to provide for a complete, full, and final release of Released Claims in favor of the Released Parties, as described below in more detail.

NOW, THEREFORE, it is hereby agreed and stipulated by and between Plaintiffs, who are acting as Class Representatives on behalf of themselves and all other Settlement Class Members, by and through their Class Counsel, RWC, and Home Depot, and intending to be legally bound, that, except as specifically stated to the contrary in this Agreement, all of the Released Claims shall be settled and compromised, and all such claims shall be dismissed on their merits with prejudice, according to the terms and conditions set forth below.

## AGREEMENT TERMS

### Settlement Class Certification

60.    Plaintiffs will seek conditional class certification for purposes of settlement. RWC and Home Depot do not oppose this class certification for settlement purposes only. Plaintiffs will seek to conditionally certify the following Settlement Class:

> All persons and entities who purchased for direct consumption or use and not for resale, a Water Heater Connector or who own, owned, lease or leased, a residence or other structure located in the United States during the time that such residence or structure contained a Water Heater Connector.

61.    Excluded from the Settlement Class are:

a.        Anyone who resolved their Water Heater Connector claims with any Released Party through settlement or final judgment except as provided for by way of this Agreement;

b.            RWC, Home Depot, and their affiliates, except that individual employees of the foregoing shall not be excluded from the Class to the extent they have a valid claim pursuant to the terms herein;

c.            Anyone who purchased a Water Heater Connector solely for resale;

d.            Anyone who received a refund and/or replacement for a Water Heater Connector they purchased;

e.            The presiding District Judge in the Class Action and her immediate family; and

f.            Anyone who timely requests to be excluded from the Class.

**Consideration to Settlement Class Members**

62.    RWC shall pay, or cause to be paid, a Total Settlement Amount of $3,800,000 into the Common Fund in accordance with the funding provisions set forth in this Agreement, which represents the full extent of its, Home Depot's, and the Released Parties' liability and payment obligations, inclusive of the Replacement and Damages Remedies, settlement administration costs/expenses, the cost/expense of all Notices, and legal costs/expenses (including, without limitation, any attorneys' fee or Service Award award/judgment, as ordered by the Court), and exclusive only of the Water Heater Connectors to be supplied by RWC to the Claims Administrator pursuant to paragraph 114.

63.    The Common Fund shall be deposited into an interest-bearing account established and administered by the Settlement Administrator at a financial institution approved by Class Counsel and RWC, and shall be maintained as a "qualified settlement fund" for federal income tax purposes pursuant to Treasury Regulation §1.468 B-1, *et seq*.

64.    The Common Fund shall be funded as follows:

a.    Within thirty (30) days after receipt of an invoice from the Notice Provider for the cost of the Settlement Notice and claims administration, RWC shall pay or cause to be paid into the Common Fund the amount of said invoice, such payment to be credited against the Total Settlement Amount.

b.    Within twenty (20) days of the Effective Date, RWC shall pay or cause to be paid into the Common Fund the remainder of the Total Settlement Amount left after payment of the invoice described in paragraph 64(a).

c.    Immediately after clearance of the funds deposited pursuant to paragraph 63(b), the Claims Administrator shall remit to Class Counsel by wire transfer the legal costs/expenses of Plaintiffs' Counsel (including, without limitation, any attorneys' fee award/judgment and any Service Awards) as awarded by the Court pursuant to Class Counsel's instructions.

d.    If any money remains in the Common Fund after the end of the Damages Claims Period and after all valid Settlement Claims for the Replacement

Remedy and Damages Remedy have been paid, the amount remaining in the Common Fund, shall be distributed to Habitat for Humanity as a *cy pres* distribution.

   e. To the extent that a check issued to a Claimant is not cashed within ninety (90) calendar days after the date of issuance or an electronic deposit is unable to be processed within ninety (90) calendar days of the first attempt, such funds shall remain in the Common Fund and the Settlement Administrator shall make a second attempt to distribute those settlement payments. To the extent that a second check issued to a Claimant is not cashed within ninety (90) calendar days after the date of issuance or an electronic deposit is unable to be processed within ninety (90) calendar days of the second attempt, such funds shall be paid to the Habitat for Humanity as a *cy pres* distribution.

  65. No amounts from the Common Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. Nothing in this paragraph, or otherwise in this Agreement, will be considered to be Defendants' assent to any request by Plaintiffs for an award of attorneys' fees to Plaintiffs' Counsel or a request for a Service Award to Plaintiffs. Plaintiffs expressly reserve their rights to request an award of attorneys' fees and/or a Service Award, and Defendants expressly reserve their rights to oppose any such motion. Counsel for the Parties may jointly authorize the periodic payment of actual reasonable settlement administration-related costs/expenses from the Common Fund as such

expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and RWC with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Common Fund at least three (3) business days prior to making such withdrawal or payment.

66.    In the event this Agreement is voided, terminated or cancelled for any reason: (i) the Settlement Administrator, Class Representatives, Class Counsel, Plaintiffs' Counsel and Plaintiffs shall have no obligation to repay any of the settlement administration- related costs/expenses that have been paid or incurred in accordance with any term or condition of this Agreement or any costs or expenses incurred by Defendants in the furtherance of or related to this Agreement; (ii) any amounts remaining in the Common Fund, after payment of administration expenses paid or incurred in accordance with any term or condition of this Agreement, including all interest earned on the Common Fund net of any taxes, shall be returned to RWC; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

67.    All Taxes relating to the Common Fund shall be paid out of the Common Fund, shall be considered a settlement administration expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Common Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such

indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Common Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Common Fund pursuant to this Agreement.

68.    Limitation of liability:

a.        Other than as set forth herein, the Parties and their counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Common Fund; (iii) the formulation, design or terms of the disbursement of the Common Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Common Fund; (v) any losses suffered by, or fluctuations in the value of the Common Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Common Fund or the filing of any returns.

b.        The Settlement Administrator shall indemnify and hold

Defendants, Defendants' Counsel, Class Counsel, Plaintiffs' Counsel, the

Settlement Class, and Class Representatives harmless for (i) any act or omission or

determination of the Settlement Administrator, or any of Settlement Administrator's

designees or agents, in connection with the Notice Plan and the administration of the

Common Fund; (ii) the management, investment or distribution of the Common

Fund; (iii) the formulation, design or terms of the disbursement of the Common

Fund; (iv) the determination, administration, calculation or payment of any claims

asserted against the Common Fund; (v) any losses suffered by or fluctuations in the

value of the Common Fund; or (vi) the payment or withholding of any taxes,

expenses, and/or costs incurred in connection with the taxation of the Common Fund

or the filing of any returns.

69.    The Settling Parties believe that the Common Fund described

throughout this Agreement will be sufficient to provide the full amount of benefits

available under this Agreement to all Claimants who submit valid Claim Forms.

**Reasonable Efforts and Dealings with Putative Settlement Class Members**

70.    Class Counsel and Defendants' Counsel agree that they will use

reasonable efforts to (i) recommend and obtain approval of this Agreement by the

Court, in accordance with Rule 23 of the Federal Rules of Civil Procedure; (ii) carry

out the terms of this Agreement; (iii) support this Agreement in all public statements;

and (iv) secure the prompt, complete, and final dismissal on the merits and with

prejudice of the Class Action.

71.     If contacted by Settlement Class Members about this Agreement, the Settlement or the claims made pursuant to this settlement, RWC and Home Depot shall refer potential Settlement Class Members to the Settlement Administrator, Class Counsel or the established toll-free number and/or website applicable to this settlement.

**The Preliminary Approval Order**

72.     Class Counsel shall file a motion for entry of the Preliminary Approval Order as soon as practical after the execution of this Agreement, in the form attached hereto as Exhibit "A," requesting that the Court enter an Order that:

a.     Provides for the conditional certification of the Settlement Class for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and approval of the Class Representatives to act as the representative plaintiffs for the Settlement Class, and Co-Lead Class Counsel to represent the Settlement Class;

b.     Determines that the Agreement falls within the range of reasonableness for the settlement of this Class Action;

c.     Provides for approval of the Notice Plan and dissemination of Settlement Notice;

d.     Establishes the Opt Out Deadline and Objection Deadline,

including approval of the procedures for both as set forth in the Settlement Notice as approved by the Court;

   e.  Schedules a Final Approval Hearing to: (i) consider the fairness, reasonableness, and adequacy to the Settlement Class Members of the proposed settlement provided for in this Agreement; (ii) consider the granting of final approval of the proposed settlement provided for in this Agreement and the dismissal on the merits and with prejudice of the Class Action; (iii) consider Class Counsel's application for an award/judgment of attorneys' fees and costs/expenses; and (iv) consider such other matters as the Court may deem to be necessary or proper under the circumstances in accordance with Rule 23 of the Federal Rules of Civil Procedure;

   f.  Appoints the Notice Provider and Claims Administrator;

   g.  Provides that the conditional class certification for settlement purposes shall expire in the event the Effective Date does not take place; and

   h.  Enjoins all Settlement Class Members, and all persons or entities who can pursue or are entitled to pursue an action in the name or right of a Settlement Class Member, from commencing or prosecuting any action asserting any claims that fall within the scope of the Released Claims (as defined hereunder) until the entry of the Final Order and Judgment, unless such Person has validly opted out of this settlement and Agreement and the Court has approved such opt out.

73.     In the event the Final Order and Judgment is not entered or is reversed for any reason, or this Agreement is voided or terminated for any other reason, any stay of any litigation imposed under the Preliminary Approval Order shall be automatically lifted and the Settlement Class Members shall not be deemed to have waived any rights with respect to proceedings in the litigation of such actions that arise during the period of the stay and shall have a full and fair opportunity to present any position in any such proceedings, and RWC and Home Depot shall not be deemed to have waived any defense to proceedings in the litigation of such actions that arise during the period of the stay and shall have a full and fair opportunity to present any position in any such proceedings.

## Notice Plan

74.     The Settlement Notice to be provided to Settlement Class Members shall be pursuant to a Notice Plan approved by the Court and effectuated by a Court-approved Notice Provider. The cost/expense of such notice shall be paid from the Common Fund described in this Agreement. The Settling Parties and their counsel agree that reasonable notice of this Agreement consistent with the due process requirements of the United States Constitution and applicable case law shall be given to Settlement Class Members pursuant to the Preliminary Approval Order of the Court.

75.     The Settling Parties agree, subject to approval by the Court, that the

Settlement Notice should be in the form attached to this Agreement as Exhibits B (Long Form Notice), C (Email Notice), and D (Settlement Postcard) and that the Claim Form shall be in the form attached as Exhibit E. The Long Form Notice and Claim Form shall also be available to Settlement Class Members on the settlement website in Spanish.

76.     The Settling Parties have agreed that notice will be delivered through: (i) direct electronic notice by email to those class members for whom RWC or Home Depot have a valid email address; (ii) direct mailings to all reasonably identifiable Settlement Class Members for whom RWC or Home Depot have a postal address, but no email address; (iii) a dedicated website; (iv) a robust media campaign consisting of state-of-the-art targeted internet notice and search engine marketing designed to target home and property owners, lessees and property managers; and (v) a toll-free telephone number that will provide Settlement Class Members with information and direct them to the settlement website.

77.     The Notice Plan is set forth in more detail in the Declaration of Cameron Azari on behalf of Epiq Global as Notice Administrator, which is attached hereto as Exhibit "F."

78.     Notices shall be disseminated in accordance with the Notice Plan approved in the Preliminary Approval Order.

79.     A postcard notice, as approved by the Court, shall be mailed, postage

prepaid, to those persons described in paragraph 76(ii) above. Defendants shall ensure that the Settlement Administrator receives the names of any Settlement Class Members who can be identified through Defendants' records as having purchased a Water Heater Connector, and any reasonably available physical mailing addresses and/or e-mail address for such Settlement Class Members. Defendants shall jointly cooperate with the Settlement Administrator to ensure the data provided pursuant to this paragraph is provided in a format that the Settlement Administrator can use to carry out all functions set forth in this Agreement, including the provision of personal notice to any Settlement Class Members for whom e-mail or physical mail addresses are reasonably available. The Settlement Administrator, as a condition of its retention as Settlement Administrator, will keep all information it receives from Defendants concerning Settlement Class Members strictly confidential except as necessary to carry out the Settlement Administrator's functions in administering this Settlement. In the event any Settlement Class Member contacts Class Counsel concerning this Settlement, the Settlement Administrator may provide any information to Class Counsel concerning only such Settlement Class Member to the extent necessary for Class Counsel to communicate with the Settlement Class Member concerning the Settlement.

80.    Pursuant to 28 U.S.C. § 1715, RWC, through the Notice Provider, shall mail all required notices in accordance with Defendants' obligations thereunder.

81.     The Notice Provider shall file proof, by affidavit, of timely completion of the Notice Plan and its reach to Settlement Class Members no later than fifteen (15) days prior to the Final Approval Hearing, unless otherwise provided by the Preliminary Approval Order.

82.     No later than the dissemination of the first Settlement Notice pursuant to paragraph 75, the Claims Administrator shall establish a toll-free telephone facility. The toll-free telephone number of such facility shall be included in the published notice. The telephone facility shall be capable of: (i) receiving requests for Claim Forms, the long-form notice regarding this Agreement described in paragraph 74, or any other materials described in this section; and (ii) providing general information concerning deadlines for objecting to and opting out of the Agreement or filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing. The toll-free number shall be maintained by the Claims Administrator during the entirety of the Claims Period.

83.     The Claims Administrator shall mail or e-mail long-form notices, Claim Forms, or any other required materials to anyone requesting them.

84.     The Claims Administrator shall maintain records of its activities, including logs of all telephone calls and mailings, and shall keep a computerized database containing a running tally of the number of and types of materials mailed or e-mailed by it.

85.    No later than the time of dissemination of the first Settlement Notice to be issued pursuant to the Notice Plan, the Claims Administrator shall establish an Internet website concerning the settlement. The domain name for this website shall be www.connector-settlement.com. The website shall be maintained by the Claims Administrator during the entirety of the Claims Period. The Internet address of the website shall be included in the Settlement Notice. The website shall provide, among other things: (i) generalized information concerning deadlines for opting out of and objecting to the Settlement or filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing (in English and Spanish); (ii) a listing of the toll-free phone number to be established pursuant to paragraph 80; and (iii) copies of this Agreement, the Preliminary Approval Order, the filings with the Court relating to approval of the proposed settlement, the long-form notice, the Claim Form and information concerning the submission of Claim Forms.

86.    The Notice Provider must complete the Notice Plan as ordered by the Court.

**Opt Outs and Objections**

87.    To exclude themselves from the Agreement, any Settlement Class Member must send written notification of the decision to request exclusion by first class mail to the Settlement Administrator, which letter must bear the personal signature of the Settlement Class Member and must include: (i) a specific request to

be excluded from the Agreement; (ii) the Settlement Class Member's name, current address, telephone number, and email address; (iii) proof that the Settlement Class Member has owned or leased a residence or other structure that contains a Water Heater Connector; (iv) the approximate date of purchase or installation of any failed Water Heater Connector and the approximate date of failure (if applicable); and (v) an estimate of the amount of damages, if any, that the Person sustained as the result of any alleged failure of a Water Heater Connector. Any request to be excluded from this Agreement shall be valid only as to the Settlement Class Member whose personal signature appears on the written request.

88.    If the Settlement Class Member has entered into a written or oral agreement to be represented by counsel, the Opt Out Form shall also be signed by the attorney who represents the Settlement Class Member. In seeking the Preliminary Approval Order, the Settling Parties will request that the deadline for submission of requests for exclusion be set on a date thirty (30) days prior to the first scheduled Final Approval Hearing.

89.    Except for those Settlement Class Members who have properly filed a timely written Opt Out Form (and all other Excluded Persons) as approved by the Court, all persons or entities who meet the definition of Settlement Class Member will be deemed Settlement Class Members for all purposes under this Agreement and shall be bound by its provisions.

90.     Any Settlement Class Member, including any insurer or other party who can or is entitled to pursue a claim through or in the name or right of a Settlement Class Member, who has not properly served a valid, timely written Opt Out Form shall be bound by this Agreement and by all subsequent proceedings, orders, and judgments issued by the Court. Any Settlement Class Member who elects to opt out of the Settlement Class and whose opt out is approved by the Court pursuant to this Agreement shall not be entitled to relief under and shall not be affected by this Agreement.

91.     The Agreement and the settlement may be voided, at the election of RWC in its sole and absolute discretion, if Settlement Class Members with claims for the Damages Remedy collectively totaling more than $380,000 have opted out of the Settlement Class.

92.     A Settlement Class Member may object to this Agreement by either (i) filing written objections in the Class Action with the Court, or (ii) sending a written objection by first class mail to the Claims Administrator by the Objection Deadline. The Claims Administrator shall file with the Court any objections within seven (7) days of its receipt from a Settlement Class Member.  The objection must bear the personal signature of the Settlement Class Member with the date signed and must specify: (i) the name of the Class Action (*Elder, et al. v. Reliance Worldwide Corporation, et al.*, Case No. 1:20-cv-01596 (N.D. Ga.)); (ii) the Settlement Class

Member's current address, telephone number, and email address; (iii) proof that the objector's current or prior residence or structure contains or contained a Water Heater Connector designed, manufactured, distributed, and/or sold by RWC (photographs, contemporaneous installation records, etc.), and/or proof that the Settlement Class Member purchased a Water Heater Connector for direct consumption or use and not for resale; (iv) the address of the property(ies) that may contain or have contained the Water Heater Connectors; (v) the nature of the objection, the facts underlying the objection, and legal authority supporting the objection, if any, and whether or not the Settlement Class Member intends to appear at the Final Approval Hearing; and (vi) all evidence and supporting papers (including, but not limited to, all briefs, written evidence, and declarations) that the Settlement Class Member wants the Court to consider in support of the objection. If the Settlement Class Member is represented by counsel, the objection shall also be signed by both the Settlement Class Member and the attorney who represents the Settlement Class Member. If a Settlement Class Member or counsel for the Settlement Class Member has objected to a class action settlement on any prior occasion, the objection shall disclose all cases in which the objector(s) has filed an objection by caption, court, and case number.

93.    The Parties reserve the right to seek discovery of any Settlement Class Member who objects as described above, including but not limited to a demand that

the objector make (i) the alleged product (if available) at issue available for inspection and confirmation by Class Counsel and Counsel for Defendants; and (ii) himself/herself/itself available for deposition before the Settling Parties file a motion for final approval of the settlement.

94.     In seeking the Preliminary Approval Order, the Settling Parties will request that the deadline for submission of objections be thirty (30) days prior to the first scheduled Final Approval Hearing.

95.     Settlement Class Members who object to the Agreement may appear and be heard orally at the Final Approval Hearing.

**Releases**

96.     Upon the Effective Date, all Settlement Class Members on behalf of themselves and their agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, shareholders, owners associations, and any and all persons or entities who can or are entitled to make a claim through or in the name or right of any of them (the "Releasing Parties"), release and forever discharge each of RWC and Home Depot, and each of their administrators, insurers, reinsurers, agents, firms, parent companies/corporations, sister companies/corporations, subsidiaries and affiliates, and all businesses and entities that designed, manufactured, distributed, sold and/or installed a Water Heater Connector, including all customers, retailers, resellers, wholesalers, and distributors who purchased or

acquired Water Heater Connectors from any source for resale and those persons or entities who installed such Water Heater Connectors; and all of the foregoing persons' or entities' respective predecessors, successors, subsidiaries, assigns, insurers, and present and former officers, directors, shareholders, employees, agents, attorneys, and representatives ("Released Party" or collectively, the "Released Parties") from each and every claim of liability, on any legal or equitable ground whatsoever, including relief under federal law or the laws of any state, that were or could have been brought by the Releasing Parties, and that are based upon or arise out of the allegations in the Class Action, including but not limited to, the purchase, use or any alleged failure of a Water Heater Connector, including, without limitation, all claims, damages, punitive or exemplary damages, fees, costs, expenses or liability on any legal or equitable ground whatsoever, and regardless of whether such claims might be brought directly or indirectly, or through subrogation or assignment or otherwise, on account of or related to the purchase, use or failure of a Water Heater Connector, which have been or could have been alleged in the Class Action ("Released Claims"). The releases provided for herein are as a result of membership as a Settlement Class Member to this Agreement or status as a Person with a legal right to assert claims of a Settlement Class Member, the Court's approval process herein, and are not conditional on any particular Settlement Class Member's receipt of payment. It is the intent of the Settling Parties and this Agreement that persons or

entities who acquire legal rights to assert claims within the scope of this Agreement that belong initially to a Settlement Class Member be included in the definition of "Releasing Parties" and that such claims be included in the definition of "Released Claims."

97.    The release provided by this Agreement shall be and is broad and expansive and shall include release of all damages, burdens, and/or obligations of liability of any sort, including, without limitation, penalties, punitive damages, exemplary damages, statutory damages, damages based upon a multiplication of compensatory damages, court costs, or attorneys' fees or expenses, which have been made or might otherwise have been made in connection with any claim relating to the purchase, use, or alleged failure of the Water Heater Connector.

98.    This release includes all claims that the Settlement Class Members have or may hereafter discover including, without limitation, claims, damages, liabilities, or facts in addition to or different from those now known or believed to be true with respect to any matter disposed of by this Agreement. By this Agreement, the Settlement Class Members have fully, finally, and forever settled and released any and all such claims, damages, liabilities, or facts whether known or unknown, suspected or unsuspected, contingent or non-contingent, past or future, whether or not concealed or hidden, which exist, could exist in the future, or heretofore have existed upon any theory of law or equity now existing or coming into existence in

the future, including, but not limited to, conduct which is negligent, reckless, willful, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, claims, damages or liabilities. The Settlement Class Members expressly and intentionally waive any and all rights and benefits which they now have or in the future may have under the terms of the law (whether statutory, common law, regulation, or otherwise) of any other state or territory of the United States as related to matters arising from or in any way related to, connected with, or resulting from the purchase, use, or alleged failure of a Water Heater Connector. The Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have acknowledged that the foregoing waiver was separately bargained for and a material element of the settlement of which the releases herein are a part.

99.    It is the intent of the Settlement Class Members that no Releasing Party shall recover, directly or indirectly, any sums for claims released by operation of this Agreement, including, without limitation, to the claims settled and released herein, from the Released Parties, other than sums to be received under this Agreement, and that the Released Parties shall have no obligation to make any payment to any non-parties for liability arising out of claims released by operation of this Agreement.

100.    If, notwithstanding the intention of the Settling Parties expressed herein, any release given by the Releasing Parties is not given its full effect by

operation of law, then the Releasing Parties shall be deemed to have and do hereby transfer and assign to the Released Parties all Released Claims, if any, that were deemed not released, to the extent necessary to effectuate the intent of the release.

101.    Class Counsel shall cooperate with Released Parties to ensure that the releases set forth in the Final Order and Judgment are given their full force and effect (including by seeking the inclusion of the releases in the Final Order and Judgment and the Claim Form) and to ensure that Releasing Parties comply with their obligations set forth in this Agreement.

102.    Releasing Parties agree that the provisions of this Agreement and any claim thereunder constitute a good faith settlement under California Code of Civil Procedure §§ 877 and 877.6, Hawaii Revised Statutes 663-15.5, and comparable laws in other states; that Class Counsel and Releasing Parties shall cooperate fully in any effort of Released Parties to establish such good faith settlement before any court (including, without limitation, by joining in any motion or other procedure and providing declarations and other evidence to establish such good faith settlement where requested by any Released Party); and that all payments made under this Agreement relate to claims arising out of or related to purchase, use, or alleged failures of the Water Heater Connectors.

103.    In the event that any Releasing Party seeks to invoke California Civil Code § 1542, which provides that:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

(or any other like provision or principle of law of any jurisdiction) in connection with the purchase, use, or alleged failure of the Water Heater Connectors, the Releasing Parties and each of them now expressly waive the provision of California Civil Code § 1542 (or any other like provision or principle of law of any jurisdiction) to the full extent that these provisions may be applicable to this release. Each of the Releasing Parties hereby does consider, and shall be deemed to have considered, the possibility that the number or magnitude of all claims may not currently be known; nevertheless, each of the Releasing Parties assumes the risk that claims and facts additional, different, or contrary to the claims and facts that each believes or understands to exist, may now exist, or may be discovered after this Agreement becomes effective. Each of the Releasing Parties agrees that any such additional, different, or contrary claims and facts shall in no way limit, waive, or reduce the foregoing release, which shall remain in full force and effect. Nothing in this paragraph shall be construed as modifying or limiting the other provisions of this Agreement concerning the potential availability of Settlement Claims or other claims

for purchases, use, or alleged failures of the Water Heater Connectors that occur after the date of entry of the Final Order and Judgment.

### Payment of Legal Costs/Expenses (including Attorneys' Fees) to Class Counsel and Class Representatives

104.    At least 60 days prior to the date of the first scheduled Final Approval Hearing, Class Counsel may apply for an award of attorneys' fees and expenses to be paid from the Total Settlement Amount. This Agreement is not contingent on any amount being awarded by the Court for attorneys' fees and expenses, or any Service Awards, and Defendants reserve the right to oppose any such application for fees and costs and Service Awards.

105.    Payment of the costs/expenses (including attorneys' fees) as awarded/adjudged by the Court shall constitute full satisfaction of any claim for costs/expenses (including attorneys' fees) between and among Plaintiffs' Counsel, and the Settlement Class Members, on the one hand, and RWC, Home Depot, and the Released Parties, on the other hand. Any such award of settlement administration-related costs/expenses (including attorneys' fees) will be paid from the Common Fund. Class Representatives and Plaintiffs' Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall not seek any additional costs/expenses (including attorneys' fees) under any theory as against RWC, Home Depot, or the Released Parties. Under no circumstances shall RWC or

Home Depot be responsible for paying any amounts above the Total Settlement Amount agreed to hereunder.

106.    Except as provided herein, RWC, Home Depot, and other Released Parties shall have no obligation with respect to the Settlement Class Members' costs or expenses (including attorneys' fees).

## Claims Process and Eligibility of Settlement Class Members

107.    Co-Lead Class Counsel and Counsel for RWC shall work with the Claims Administrator to plan a claims procedure to implement this Agreement and resolve any issues concerning the administration of this settlement.

108.    The Claims Administrator shall be responsible for effectuating the claims process. The reasonable costs/expenses (including any fees) of the Claims Administrator shall be paid from the Common Fund.

109.    In no event shall Plaintiffs, RWC, Home Depot, Counsel for RWC, Counsel for Home Depot, the Released Parties, or Class Counsel have any liability for claims of wrongful or negligent conduct on the part of the Claims Administrator or its agents.

110.    The Claims Administrator shall:

    a.    use personal information acquired as the result of this Agreement solely for purposes of evaluating and paying claims under this Agreement;

    b.    assign a manager to oversee the protection and appropriate

management of personal information and review its internal system to manage the protection of personal information to ensure consistent performance and constant improvement;

        c.      take security countermeasures to prevent unauthorized access to personal information and the loss, destruction, falsification and leakage of personal information;

        d.      if outsourcing the handling of personal information, determine that outsourced companies take steps to ensure appropriate management of the information to prevent leaks of personal or confidential information, and prohibit re-use of information for other purposes;

        e.      respond immediately with appropriate measures when necessary to disclose, correct, stop using, or eliminate contents of information; and

        f.      following the completion of the Claims Period and in compliance with applicable retention law, immediately remove all data accessible from a remote connection and destroy all personal information obtained in connection with this settlement in a manner most likely to guarantee that such information not be obtained by unauthorized persons.

    111.    The Claims Administrator shall maintain a complete and accurate accounting of the receipts, expenses (including claims administration costs), approvals, and payments made for Replacement Claims and Damages Claims

pursuant to this Agreement. The accounting shall be made available to Class Counsel, Counsel for RWC, Counsel for Home Depot, RWC, and Home Depot on reasonable notice.

112.    Any Settlement Class Member who wishes to make a Settlement Claim must completely fill out and sign a Claim Form and must provide the Claims Administrator with all requested information. The release contained in the Claim Form and required by this paragraph shall in no way be construed to limit, amend, or alter the terms of the releases provided by this Agreement.

113.    The Settling Parties intend by this Agreement to bind all persons and entities who purchased for direct consumption or use and not for resale, a Water Heater Connector or who own, owned, lease or leased, a residence or other structure located in the United States during the period of time that such residence or structure contained a Water Heater Connector, to the terms and conditions of this Agreement and to require all such persons or entities (other than those who validly opt out and exclude themselves as Settlement Class Members from this Agreement) to submit claims only through the claims process described in this Agreement.

**Claims Period**

114.    Claims must be made within the applicable Damages Claims Period or Replacement Claims Period.

**Replacement Remedy**

115.    The Replacement Remedy shall provide to Claimants either: (a) reimbursement of $15 per replacement Water Heater Connector, not to exceed two (2) replacement Water Heater Connectors per household or other structure (a maximum total of $30 per household or other structure), to be paid out of the Common Fund to all Claimants with valid claims, or (b) the Settlement Administrator to ship up to two replacement Water Heater Connectors (to be supplied by RWC) of the same type and size as the Water Heater Connector possessed by the Class Member.

        a.    To be eligible for the Replacement Remedy, a Settlement Class Member seeking the Replacement Remedy must establish (through the production of a label of the Water Heater Connector; the Water Heater Connector itself; proof of purchase, photographic evidence of either, or other sufficient proof) that they owned or leased a residence or other structure containing an installed Water Heater Connector.

        b.    The "Replacement Claims Period" shall be 120 days from the date of the entry of the Preliminary Approval Order.

        c.    All Claimants who participate in the Replacement Remedy shall be precluded from later filing a claim for a Damages Remedy.

        d.    All claims for cash reimbursement under the Replacement Remedy shall be paid from the Common Fund following any proration pursuant to

paragraph 116. All amounts remaining in the Common Fund after payment of all Replacement Claims filed during the Replacement Claims Period shall be retained in the Common Fund and will be available for payment of claims for a Damages Remedy.

e.      All claims for the Replacement Remedy must be filed within the Replacement Claims Period and received electronically by the Settlement Administrator, or if by mail, post-marked on a date that is during the Replacement Claims Period. At the conclusion of the Replacement Claims Period, the Settlement Administrator shall provide RWC with a report of the number of valid Replacement Remedy claims submitted and the number of each size and type of replacement Water Heater Connectors needed to fulfill all valid Replacement Remedy claims in which a replacement Water Heater Connector is requested. Within forty-five (45) days of RWC's receipt of the report from the Settlement Administrator, RWC will supply the Settlement Administrator with a sufficient number of Replacement Remedy Water Heater Connectors to fulfill all valid Replacement Remedy claims electing to receive a replacement Water Heater Connector. All claims for cash reimbursement under the Replacement Remedy shall be paid by the Settlement Administrator within thirty (30) days of the conclusion of claims verification of such Replacement Remedy claims or within thirty (30) days after the Effective Date, whichever is later. All claims for replacement Water Heater Connectors under the

Replacement Remedy shall be shipped by the Settlement Administrator as a cost of administration within thirty (30) days of its receipt of the replacement Water Heater Connectors from RWC or within thirty (30) days of the Effective Date, whichever is later.

### Damages Remedy

116.    Except as otherwise provided herein, the Common Fund shall be used to pay valid claims by Settlement Class Members arising from damages caused by failures of Water Heater Connectors, so long as those claims are submitted within the "Damages Claims Period."

a.    To be eligible to receive a Damages Remedy, a Settlement Class Member or other Claimant must establish that the Settlement Class Member has experienced a failure of a Water Heater Connector (i.e., the deterioration of a Water Heater Connector's rubber lining resulting in the presence of black flecks and/or sludge causing damage to one or more plumbing fixtures) and must make a claim based on such failure within the "Damage Claims Period."

b.    All Claimants seeking a Damages Remedy shall be required to submit to the Settlement Administrator reasonably available evidence that a Water Heater Connector failed, including, without limitation, the Water Heater Connector that allegedly failed, if available; any available photographs of the Water Heater Connector; available labels, packaging, or proof of purchase; and/or any other proof

that the Settlement Administrator deems adequate. Claimants shall also submit evidence that the Water Heater Connector's liner deteriorated and was the cause of the damage, along with documents substantiating their damages, including the cost of repairing damage caused by a failed Water Heater Connector. Documents shall include, but not be limited to, photographs depicting the damage that evidence that the damage is of the type alleged to have been caused by certain of the Water Heater Connectors, and receipts for costs incurred to remedy the damage, including, where applicable, any cost of hiring a professional. Compensation for costs spent on hiring a professional must be reasonable, but is not limited. In the event a Claimant elected to personally repair the damage, instead of engaging a plumber or other professional to do so, such Claimant may be compensated for a maximum of four (4) hours of time to remedy the damage at a rate of no more than $25 per hour (and for no more than a total of $100 per household or other structure) by submitting a description of the work performed and the time spent.

       c.     All Damages Remedy claims must be made within the Damages Claims Period and will be paid within thirty (30) days after the conclusion by the Settlement Administrator of the evaluation of all submitted claims or within thirty (30) days of the Effective Date, whichever is later.

       d.     Claims for the Damages Remedy arising from alleged failures of Water Heater Connectors shall be administered pursuant to the following guidelines:

1.      Claims for the Damages Remedy shall be evaluated in the order in which they are submitted to the Claims Administrator.

2.      Except to answer questions regarding the terms of this Agreement and Claims Process, and to assist in identifying whether a connector is a Water Heater Connector, the Settling Parties need not participate in the evaluation performed by the Claims Administrator. The Claims Administrator shall provide Class Counsel and Counsel for RWC a report of the evaluated claims. The report shall include the Claimants' contact information, the total amount of the claim, any disallowed portion of the claim, the total amount of the claim compensable under the Agreement, and whether the claim is recommended for payment or rejected (and the basis for rejection).

3.      No compensation shall be made for a failed connector that the Claims Administrator cannot determine to be a Water Heater Connector based on the available evidence submitted by a Claimant.

4.      In the event the total amount of valid Damages Remedy claims exceed the Damages Settlement Amount, such claims will be prorated down in equal percentages until the amount payable to valid Damages Remedy claims equals twenty-five percent of the total amount of valid Damages Remedy claims. If, after this initial proration of the Damages Remedy claims, the Net Settlement Amount is still insufficient to pay all claims for cash reimbursement under the

Replacement Remedy, then the claims for cash reimbursement under the Replacement Remedy will be prorated down in equal percentages.

5.      In the event the total amount of valid Damages Remedy claims is less than the Damages Settlement Amount, any excess amount remaining in the Common Fund after the payment of all valid claims shall be distributed to Habitat for Humanity as a *cy pres* distribution.

6.      Any Damages Remedy Claimant that challenges the decision of the Claims Administrator, other than a challenge based on the proration of claims Pursuant to Section 116(d)(4), can file a claim decision dispute with the Claims Administrator. The procedure for filing a claim decision dispute shall be included in the correspondence providing the claims decision. If the claim decision dispute is not resolved to the satisfaction of the Claimant, the Claims Administrator shall submit the claim and claims decision dispute, along with any supporting documents to the Court for a final determination of the claim.

## Final Order and Judgment and Dismissal

117.    At least thirty (30) days before the Final Approval Hearing, Class Counsel shall file a motion requesting that the Court grant final approval of the settlement embodied in this Agreement and that the Court enter a Final Order and Judgment as required by and conforming to the terms and conditions of this Agreement.  The Settling Parties shall make all reasonable efforts to secure the entry

of the Final Order and Judgment.

118.    The Final Order and Judgment shall *inter alia:*

a.    Determine that the Court has and shall retain exclusive jurisdiction over: (i) the Agreement, including its administration, consummation, claim procedures, enforcement, and any other issues or questions that may arise; (ii) the Settling Parties and disputes for purposes of the Agreement; (iii) any applications for Class Counsel's legal costs/expenses (including attorneys' fees), and expenses and costs related to the Agreement; and (iv) all proceedings related to this Agreement both before and after Final Approval is entered and is no longer subject to appeal, and over enforcement of the Final Order and Judgment.

b.    Approve this Agreement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act, and other applicable law, and direct that the Agreement be implemented in accordance with its terms.

c.    Determine that the Settlement Notice, as approved by the Preliminary Approval Order, constitutes reasonable and the best practicable notice reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Class Action, the terms of the Agreement, the right to object or opt out, the right to appear at the Final Approval Hearing, the Claims Process,

that the Settlement Notice is adequate and sufficient to all persons entitled to receive such notices, and meets the requirements of due process and other applicable rules or laws.

d.      Determine that there is no just reason for delay and that the Final Order and Judgment shall be final and entered.

e.      Dismiss with prejudice the Class Action and the Complaint therein.

f.      Enjoin and forever bar all Settlement Class Members, including, but not limited to, those who have not properly opted out of the Settlement Class, from maintaining, continuing, prosecuting, and/or commencing any claim, lawsuit, action, proceeding, counterclaim, cross-claim, or defense, legal or otherwise, against RWC, Home Depot, or the Released Parties that arises from, concerns, or otherwise relates, directly or indirectly, to the purchase, use, or alleged failure of a Water Heater Connector.

g.      Refer to and invoke the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity and request that any court or other tribunal in any other jurisdiction reviewing, construing, or applying the Final Order and Judgment implement and enforce its terms in their entirety.

h.      Enter a separate order pursuant to Fed. R. Civ. P. 54(b) approving the settlement.

119.    The failure of the Court or any appellate court to approve in full the request by Class Counsel for costs/expenses (including attorneys' fees) shall not be grounds to cancel or terminate this Agreement.

120.    If the Final Order and Judgment described in paragraph 117 above is not granted in whole by the Court, or it is not upheld on appeal, or this Agreement is otherwise terminated before the Effective Date: (i) the conditional certification of the Settlement Class shall cease; (ii) the Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, and the conditional certification of the Settlement Class shall be without prejudice to any Settling Party and shall not be deemed or construed to be an admission, confession, or estoppel by any Settling Party of any fact, matter, or proposition of law; and (iii) all Settling Parties shall stand in the same procedural position as if the Agreement had not been negotiated, made, or filed with the Court.

**Effective Date**

121.    The Effective Date means one business day after all the following conditions have been satisfied:

a.    The Court has entered a Final Order and Judgment; and

b.    The Final Order and Judgment has become final. The Final Order and Judgment shall become final upon the later of: (i) all periods within which to file an appeal from the Final Orders and Judgments has expired without the filing

of any appeal, or (ii) in the event that an appeal from the Final Order and Judgment is filed, a final order has been entered disposing of the appeal, and any time for seeking leave to appeal or time for further appeal has expired.

**Exclusive Remedy, Dismissal of Action, and Jurisdiction of Court**

122.    Every Settlement Class Member who has not properly filed a timely written request for exclusion from the Settlement Class submits to the jurisdiction of the Court and will be bound by the terms of this Agreement, including, without limitation, all releases.

123.    Except for those claims remaining after the opt out process, this Agreement sets forth the sole and exclusive remedy for any and all Released Claims of Settlement Class Members against RWC, Home Depot, and the Released Parties. Upon entry of the Final Order and Judgment, each Settlement Class Member who has not validly and timely opted out of the Settlement Class and any Person that has made or can or is entitled to make a claim through or in the name or right of a Settlement Class Member, shall be barred and enjoined from maintaining, continuing, prosecuting, and/or commencing any and all Released Claims against RWC, Home Depot, or the Released Parties.

124.    Upon the Effective Date, the Class Action and all Released Claims shall be dismissed with prejudice. Moreover, after the Effective Date, RWC, Home Depot, and/or the Released Parties may seek the dismissal of any lawsuits or other legal

proceedings filed by Settlement Class Members who did not properly opt out of the settlement. Class Counsel will affirmatively support such requests for dismissal.

125.    The Court shall retain exclusive and continuing jurisdiction to interpret and enforce the terms, conditions, and obligations of this Agreement and its own orders and judgments. In the event of a breach by RWC, Home Depot, a Settlement Class Member or Class Counsel under this Agreement, the Court may exercise all equitable powers over RWC, Home Depot, such Settlement Class Member or Class Counsel to enforce this Agreement and the Final Order and Judgment irrespective of the availability or adequacy of any remedy at law. Such powers include, among others, the power of specific performance and injunctive relief.

## Other Terms and Conditions

126.    This Agreement is made for the sole purpose of attempting to consummate a settlement of the Class Action on a class-wide, nationwide basis. This Agreement is made in compromise of disputed claims and shall not be construed as an admission of liability by RWC, Home Depot, or any Released Party. RWC and Home Depot are agreeing to a settlement solely to avoid further litigation. Because this is a class action settlement, this Agreement must receive preliminary and final approvals by the Court. It is an express condition of this Agreement that the Court shall make and enter a Final Order and Judgment in writing and fully in conformance with the terms and conditions of this Agreement. If the Effective Date does not

occur, this Agreement shall be terminated and only those provisions necessary to effectuate such termination and to restore fully the Settling Parties to their respective positions before entry of this Agreement shall be given effect and enforced. In such event, the Settling Parties shall bear their own costs/expenses (except the costs of the Notice Plan which shall be borne solely by RWC) and attorneys' fees in all respects, including, without limitation, with regard to the efforts to obtain any Court approval under this Agreement.

127.    The Settling Parties and signatories to this Agreement warrant and represent that in executing this Agreement they have each had the opportunity to seek legal advice from the attorney and/or attorneys of his/her/its/their choice, and the terms of this Agreement and its consequences have been completely read and explained to any such Settling Party by such attorney. Irrespective of whether the Settling Parties and signatories have availed themselves of the opportunity to have an attorney review this Agreement, however, each Settling Party represents and expressly warrants that he/she/it/they fully understand both the terms and consequences of executing this Agreement, and executes it and agrees to be bound by the terms set forth herein knowingly, intelligently, and voluntarily.

128.    Each Settling Party and signatory agrees to execute and deliver to any other Settling Party all such additional documents and to perform all acts necessary, convenient or desirable, as may be reasonably required to fully carry out and

effectuate the intent of this Agreement.

129.    The Settling Parties acknowledge that it is their intent to consummate this Agreement and agree to make best efforts to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

130.    This Agreement compromises claims that are contested in good faith and shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or defense. It is understood and agreed by the Settling Parties that nothing in this Agreement shall be construed as an admission, concession or acknowledgment of any liability or any allegation of fact or law and that this Agreement shall not be used as evidence of any such admission, concession or acknowledgment. All actions taken and statements made by the Settling Parties or their representatives relating to their participation in this Agreement have been and will be taken and made in the context of privileged and confidential settlement negotiations, shall be without prejudice or value as precedent, and shall not be taken or construed as a standard by which other matters may be judged. The Settling Parties agree that the amounts paid in settlement and the other terms of this Agreement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal

counsel and through involvement in the Court.

131.    All the notices, orders, judgments, and other documents contemplated by this Agreement (whether in original form or as modified in writing with consent of all Settling Parties) are material and integral parts of this Agreement and are fully incorporated herein by this reference.

132.    Class Counsel, on behalf of the Settlement Class Members, expressly warrant that they are authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Settlement Class Members pursuant to the Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Settlement Class Members which they deem appropriate.

133.    Each counsel or other Person executing the Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so. Class Counsel, Counsel for RWC, and Counsel for Home Depot believe the Agreement represents a fair, just, reasonable, and good faith settlement of the claims alleged in the Class Action. The Agreement is binding on the Settling Parties, the Class Representatives, the Settlement Class Members, and as applicable herein, on Class Counsel in their own right.

134.    The Agreement shall be binding upon, and inure to the benefit of, the agents, heirs, executors, administrators, successors, and assigns of the Settling

Parties.

135.    The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Settling Party. No Settling Party shall be deemed the drafter of this Agreement. The Settling Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Settling Parties and their counsel. Each Settling Party and its counsel cooperated in the drafting and preparation of this Agreement, and this Agreement shall not be construed against either Settling Party because of its role in drafting it.  Any canon of contract interpretation to the contrary, under the law of any state, shall not be applied.

136.    This Agreement and all the notices, orders, and judgments required by this Agreement constitute the entire agreement of the Settling Parties with respect to the subject matter thereof. In entering this Agreement, no Settling Party is relying on any promise, inducement, or representation other than those set forth herein.  Any agreement purporting to change or modify the terms of this Agreement, or all of the notices, orders, and judgments required by this Agreement must be in writing and signed by counsel for each of the parties to this Agreement. Sub-headings in this Agreement are for purposes of clarity only and are not intended to modify the terms of the Agreement's text, which are controlling.

137.    The waiver by any party to this Agreement of any breach of its terms

shall not be deemed or construed to be a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous. Waivers must be in writing signed by Class Counsel, Counsel for RWC, and Counsel for Home Depot.

138.    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. All counterparts shall constitute one Agreement, binding on all parties hereto, regardless of whether all parties are signatories to the same counterpart, but the Agreement will be without effect until and unless all parties to this Agreement have executed a counterpart.

139.    This Agreement shall be governed by the laws of the State of Georgia, without regard to its conflict of laws rules, precedent, or case law.

Dated:                          _Jene Elder_
                                Jene Elder (Mar 18, 2024 12:06 CDT)
                                _____

                                Jene Elder


Dated:                          _____
                                Jim Moore (Mar 18, 2024 09:32 MDT)

                                Clark Moore


Dated:                          _____
                                Jimmy Wadlington (Mar 19, 2024 16:32 EDT)

                                Jimmy Wadlington


Dated:                          _____
                                John Choate (Mar 21, 2024 08:06 EDT)

                                John Choate


Dated:                          _____
                                Randy marquardt (Mar 19, 2024 11:55 EDT)

                                Randy Marquardt


Dated:                          _____
                                Warren Kuiper (Mar 20, 2024 09:13 EDT)

                                Warren Kuiper


Dated:                          _Kristen Montag_
                                Kristen Montag (Mar 18, 2024 11:11 EDT)
                                _____

                                Kristen Montag


                                **AHDOOT & WOLFSON, PC**


Dated:                          _____

                                TINA WOLFSON
                                CHRISTOPHER STINER
                                2600 W. Olive Ave, Suite 500
                                Burbank, CA  91505
                                Telephone:  (310) 474-9111
                                Facsimile:  (310) 474-8585
                                twolfson@ahdootwolfson.com
                                cstiner@ahdootwolfson.com

**COLSON HICKS EIDSON**

Dated:

_____

STEPHANIE CASEY
CURT MINER
THOMAS KROEGER
SABRINA S. SAIEH
255 Alhambra Circle, Penthouse
Coral Gables, FL  33134
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7400
scasey@colson.com
curt@colson.com
tom@colson.com
sabrina@colson.com


**THE HIRSCH LAW FIRM**

Dated:

_____
Andrea S Hirsch (Mar 20, 2024 14:14 EDT)

ANDREA HIRSCH
230 Peachtree Street, Suite 2260
Atlanta, GA  30303
Telephone: (404) 487-6552
Facsimile: (678) 541-9356
andrea@thehirschlawfirm.com

***Attorneys for Plaintiffs and Class Counsel
of the Proposed Class***

**RELIANCE WORLDWIDE CORPORATION**

Dated:

By: Heath G. Sharp

Its: Group CEO

**APPROVED AS TO FORM**

**GREENBERG TRAURIG, LLP**

Dated:

KEITH E. SMITH
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
smithkei@gtlaw.com

EVA M. SPAHN
STEVEN J. ROSENWASSER
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
spahne@gtlaw.com
rosenwassers@gtlaw.com

MARK A. SALKY
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
salkym@gtlaw.com

*Attorneys for Defendant*
*Reliance Worldwide Corporation*

**HOME DEPOT U.S.A., INC.**

Dated:

By: _Kacy D. Goebel_

Its: _Assistant General Counsel_

**APPROVED AS TO FORM**

**KING & SPALDING LLP**

Dated:

S. STEWART HASKINS II
J. ANDREW PRATT
BILLIE B. PRITCHARD
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-3576
shaskins@kslaw.com
apratt@kslaw.com
bpritchard@kslaw.com

*Attorneys for Defendant*
*Home Depot U.S.A., Inc.*