| | |
|---|---|
| JENE B. ELDER, *et al.* individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RELIANCE WORLDWIDE CORPORATION, a Delaware Corporation and HOME DEPOT U.S.A., INC., a Delaware Corporation, <br><br> Defendants. | CASE NO.: 1:20-CV-01596-AT <br><br> **MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** <br><br> The Honorable Amy Totenberg |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiffs Clark Moore, Jimmy Wadlington, John Choate, Randy Marquardt, Jene Elder, Warren Kuiper, and Kristen Montag ("Plaintiffs"), on behalf of a proposed Settlement Class, as defined in the proposed Amended Class Action Settlement Agreement and Release fully executed on March 21, 2024, hereby move for an order (1) granting final approval of the Settlement; (2) certifying the Settlement Class; (3) finding that Notice to the Class was directed in a reasonable manner; (4) appointing Tina Wolfson of Ahdoot & Wolfson, PC, and Stephanie A. Casey of Colson Hicks Eidson PA, as class counsel under Fed. R. Civ.

P. 23(g)(3); and (5) reserving jurisdiction with respect to implementation and enforcement of the terms of the Settlement. This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Cameron R. Azari from the Settlement Administrator; the previously filed Declarations of Tina Wolfson, Stephanie A. Casey, Mark W. Passameneck, and Christopher E. Stiner in support of the preliminary approval motion (ECF Nos. 138-1, 138-2, 138-3 & 138-4), the Joint Declaration of Tina Wolfson and Stephanie A. Casey in support of the fee motion (ECF No. 152-1), the Amended Class Action Settlement Agreement and Release (ECF No. 147), and all papers filed in support thereof; the argument of counsel; all papers and records on file in this matter; and such other matters as the Court may consider.

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   BACKGROUND ............................................................................ 2

III.  NOTICE TO CLASS MEMBERS ................................................ 2

IV.  SETTLEMENT TERMS ................................................................ 4

    A.    The Settlement Class Definition. ....................................... 4

    B.    Settlement Class Member Benefits. .................................... 5

    C.    Payment of Attorneys' Fees will Minimally Impact Claimants. ........ 6

V.   LEGAL STANDARD .................................................................... 7

VI.  ARGUMENT .................................................................................. 8

    A.    The Settlement Satisfies the Criteria for Final Approval. ......... 8

        1.  Settlement Class Representatives and Class Counsel Have Adequately Represented the Class. ...................................... 9

        2.  The Settlement is the Product of Good-Faith, Informed, and Arm's Length Negotiations. ............................................... 10

        3.  The Settlement Provides Adequate Relief to Class Members. ......... 12

            a.   The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation. ................................... 14

            b.   The Distribution of Settlement Benefits is Effective. ........ 15

            c.   Requested Service Awards and Attorneys' Fees Are Reasonable and not the Result of Collusion. ................ 16

            d.   There are no Undisclosed Side Agreements. ............... 16

        4.  The Settlement Treats Class Members Equitably Relative to Each Other. ................................................................. 16

    B.    The Settlement Class Should Be Certified. ......................... 17

        1.  The Class Meets the Requirements of Rule 23(a). ................ 17

            a.   The Class is Sufficiently Numerous. ....................... 17

            b.   There Are Common Questions of Law and Fact. ............ 18

            c.   The Class Representatives' Claims Are Typical. ............ 18

d.  The Class Representatives and Class Counsel Are More Than Adequate. .............................................................. 19

2.  The Class Meets the Requirements of Rule 23(b). ......................... 20

a.  Common Issues of Law and Fact Predominate. ........................ 20

b.  Class Treatment is Superior. ....................................................... 21

C.  Plaintiffs Complied with All Additional Approval Factors............. 22

1.  Plaintiffs Provided Adequate Notice under Rule 23(b)(3) and Rule 23(c)(2)(B)................................................................................ 22

2.  Response of Class Members to the Settlement. ............................... 24

VII.  CONCLUSION............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ajose et al. v. Interline Brands Inc.,*
   No. 3:14-cv-01707 (M.D. Tenn)................................................................13

*Alabama v. Blue Bird Body Co.,*
   573 F.2d 309 (5th Cir. 1978) ...........................................................21

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 620 (1997) ..........................................................................22

*Bennett v. Behring Corp.,*
   737 F.2d 982 (11th Cir. 1984) ......................................................... 7, 8

*Carriuolo v. Gen. Motors Co.,*
   823 F.3d 977 (11th Cir. 2016) ............................................................ 20

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ...................................................... 11, 14

*Drazen v. Pinto,*
   106 F.4th 1302 (11th Cir. 2024) ....................................................... 11

*Fabricant v. Sears Roebuck,*
   202 F.R.D. 310 (S.D. Fla. 2001)........................................................ 19

*Faught v. Am. Home Shield Corp.,*
   668 F.3d 1233 (11th Cir. 2011).............................................................7

*Francisco v. Numismatic Guaranty Corp. of America,*
   No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)................................. 10

*George v. Academy Mort'g Corp. (UT),*
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) ................................................ 15

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) .................................................. 11, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................... 11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020)..................................... 7, 24

*In re Home Depot Inc., Customer Data Sec. Breach Litig.*,
  2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)...................................... 24

*In re U.S. Oil and Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ............................................................. 8

*In re: Zurn Pex Plumbing Products Liab. Litig.*,
  MDL No. 1958, 08-md-01958 (D. Minn.) ...........................................13

*Kilgo v. Bowman Trans.*,
  789 F.2d 859 (11th Cir. 1986) ........................................................... 18

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ......................................................... 21

*Klug v. Watts Regulator Company*,
  8:15-cv-00061 (D. Neb.) ....................................................................13

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ......................................................... 18

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ................................................ 9

*Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*,
  221 F.3d 1235 (11th Cir. 2000) ......................................................... 19

*Melanie K. v. Horton*,
  2015 WL 1308368 (N.D. Ga. Mar. 23, 2015)..................................... 18

*Rosen v. J.M. Auto Inc.*,
  270 F.R.D. 675 (S.D. Fla. 2009)........................................................ 19

*Trabakoolas v. Watts Water Techs., Inc.,*
  Case No. 12-cv-01172 (N.D. Cal.) .................................................................13

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................................. 18

*Williams v. Mohawk Indus., Inc.,*
  568 F.3d 1350 (11th Cir. 2009) ............................................................. 18

**Rules**

Fed. R. Civ. P. 23 ................................................................. 1, 7, 22

Fed. R. Civ. P. 23(a) ..................................................................... 17

Fed. R. Civ. P. 23(a)(1) ......................................................... 17, 18

Fed. R. Civ. P. 23(a)(3) ................................................................. 18

Fed. R. Civ. P. 23(a)(4) ................................................................. 19

Fed. R. Civ. P. 23(b) ..................................................................... 20

Fed. R. Civ. P. 23(b)(3) ...................................................... 17, 20, 21, 22

Fed. R. Civ. P. 23(c)(2) ........................................................... 22, 24

Fed. R. Civ. P. 23(c)(2)(B) ..................................................... 22, 23

Fed. R. Civ. P. 23(e) ....................................................................... 8

Fed. R. Civ. P. 23(e)(2) .............................................................. 7, 8

Fed. R. Civ. P. 23(e)(2)(A) ............................................................ 9

Fed. R. Civ. P. 23(e)(2)(B) .......................................................... 10

Fed. R. Civ. P. 23(e)(2)(C) .......................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..................................................... 15

Fed. R. Civ. P. 23(e)(2)(D) ..................................................... 16, 17

Fed. R. Civ. P. 23(e)(3) ................................................................. 8, 16

Fed. R. Civ. P. 23(e)(5) ................................................................. 24

Fed. R. Civ. P. 23(h) ...................................................................... 7

Fed. R. Civ. P. 30(b)(6) ................................................................ 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION[1]

The Court should grant final approval of this class action Settlement. It is not only fair, reasonable, and adequate, as the Court found at the preliminary approval stage, but the reaction of the class is overwhelmingly positive after robust notice.

The Parties negotiated an excellent Settlement that provides Class Members relief for all potential damages Class Members may have incurred. The Settlement offers Class Members the choice to receive cash reimbursement or replacement of up to two Water Heater Connectors per household or structure, plus compensates Class Members who suffered property damage for out-of-pocket repair costs and for time spent fixing the damage, an uncommonly achieved remedy in class settlements. The Parties negotiated the Settlement at arms' length after robust discovery when they had the necessary information to evaluate the risks of continued litigation.

The Notice Program, which included direct mail notice, direct email notice, and an Internet media campaign that included social media and a settlement website, fulfills the requirements of Rule 23 and due process as the best notice practicable under the circumstances. As a result, 11,660 of reimbursement claims and 285 of

---

[1] Unless otherwise defined, all capitalized terms herein have the meaning set forth in the Amended Class Action Settlement Agreement and Release ("SA" or the "Settlement"). ECF No. 147.

other claims were submitted. (The Claims Administrator is evaluating these claims and Plaintiffs will submit an update prior to the hearing on Final Approval.)

As of the date of this filing, the Claims Administrator has received only one valid exclusion and two objections out of approximately 3.5 million Settlement Class Members who received either direct notice or notice via the media program. This overwhelmingly positive reaction from the class supports final approval.

## II.  BACKGROUND

This action concerns Water Heater Connectors manufactured by Defendant Reliance Worldwide Corporation ("RWC") that contain a rubber lining that allegedly disintegrates, depositing rubber flakes or a sludge-like substance in appliances, faucets, and shower heads connected to hot water lines. These Water Heater Connectors are sold by Defendant Home Depot USA, Inc. ("Home Depot").

The Settlement, outlined below, was hard-fought and reached at arm's length only after extensive discovery and including two mediation sessions with the Honorable William S. Duffey, retired U.S. District Judge of the Northern District of Georgia, and numerous additional hours of negotiations between the Parties. ECF No. 152-1 ¶¶ 15-18. The Court granted preliminary approval of the Amended Settlement Agreement and approved the Notice Plan on April 23, 2024. ECF No. 149.

## III.  NOTICE TO CLASS MEMBERS

The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc.,

disseminated class notice as ordered by the Court, successfully delivering notice to an overwhelming majority of the Settlement Class through delivery of direct email notice to 4,450,900 email addresses, postcard notice to 268,765 physical addresses, and a robust media campaign through targeted ads on social media (*Google Display Network*, *Facebook*, and *Instagram*). Azari Decl. ¶¶ 11,13, 20-23. The combined notice reached approximately 73% of the Settlement Class. *Id*. ¶ 31.

Further, Epiq set up a website, https://connector-settlement.com, for Class Members, allowing online and convenient submission of claims, and providing information about key dates, important documents, the Long-Form Notice in Spanish and English, and a Frequently Asked Questions section that answered common Class Member questions. *Id.* ¶ 24. Epiq fielded over 1,325 calls and over 132,797 individuals visited the Settlement website. *Id*. ¶¶ 24, 25.

During the claims period, a total of 12,302 claim forms were submitted, including 11,660 claims for reimbursement for or replacement of the product. *See* Azari Decl. ¶ 29. By way of comparison, counsel for RWC represented to the Court at the preliminary approval hearing that similar cases received, on average, 800 claims for product replacements. *See* ECF No. 141 at 121:9-18. Thus far, out of approximately 3.5 million potential Class Members, one valid opt-out request and two objections were received. The deadline to request exclusion from, or object to, the Settlement is September 21, 2024, and the Settlement Administrator's final report is

due October 4, 2024. Accordingly, Plaintiffs will address the substance of any objections in their reply in further support of this Motion.

Regardless, the reaction from Class Members to the Settlement has been resoundingly positive.

## IV. <u>SETTLEMENT TERMS</u>

### A. The Settlement Class Definition.

The proposed Settlement Class is defined as:

> All persons and entities who purchased for direct consumption or use and not for resale, a Water Heater Connector or who own, owned, lease or leased, a residence or other structure located in the United States during the time that such residence or structure contained a Water Heater Connector.

SA ¶ 42. "Water Heater Connector" means a braided stainless steel supply line containing an EPDM hose liner distributed by RWC and identified by Part Numbers beginning with "U3068FLEX" or "U3088FLEX". *Id.* ¶ 46. Excluded from the Settlement Class are: anyone who has already resolved their Water Heater Connector claims with any Released Party through settlement or final judgment; the Defendants and their affiliates, but not their individual employees; anyone who purchased a Water Heater Connector solely for resale; anyone who already received a refund and/or replacement for their purchase; the presiding District Judge in this action and her immediate family; and anyone who timely opts out. *Id.* ¶ 59.

## B. Settlement Class Member Benefits.

The Settlement benefits are designed to provide Class Members with a remedy that is directly responsive to the harm they incurred.

First, all Class Members can receive up to two replacement Water Heater Connectors per household or structure of the same type and size possessed by the Class Member, regardless of whether the Water Heater Connector in place in their home or structure has yet failed. SA ¶¶ 37, 113. Alternatively, the Class Members can elect to receive a cash reimbursement of $15 per replacement Water Heater Connector (up to $30 per household or structure). SA ¶¶ 37, 113. 10,465 Class Members submitted claims for cash reimbursement for an approximate total of value of $313,950. Azari Decl. ¶ 29. 1,195 Class Members submitted claims for replacement Water Heater Connectors for a total value of $35,850. *Id.* ¶ 29. Critically, there was no limit placed on the number of Class Members that could submit a claim for a replacement Water Heater Connector. A conservative estimate of the value of the relief for replacement of the approximately seven million Water Heater Connectors still in service alone is $105 million. ECF No. 138-4 ¶¶ 3-6.

Second, those Class Members with proof of property damage resulting from a failed Water Heater Connector will be reimbursed for that property damage, including up to four hours of time spent remedying the problem. SA ¶¶ 15, 114. 151 timely claims for property damage were filed totaling $675,383 with a median claim value

of $1,651. Azari Decl. ¶ 29. Another 134 timely claims were filed where the claimant failed to identify an amount. *Id.* ¶ 29. Assuming these claims have a similar median value, a reasonable estimate of their total value would be $221,312.

Damages remedy and cash replacement remedy claims will be paid out of a common fund of $3,800,000 (SA ¶¶ 45, 60, 62), along with notice and settlement administration-related costs estimated at $450,000, and requested attorneys' fees and costs of $2,300,000, and Plaintiffs' service awards of $35,000. ECF No. 138-1 ¶ 22; ECF No. 152. All of the foregoing will be paid out of a common fund of $3,800,000. SA ¶¶ 45, 60, 62. Assuming all the timely filed claims are approved, replacement remedy claims will be paid in full and Plaintiffs estimate that damages remedy claimants will receive 78% of their claim amount.

Any money remaining in the fund after the payment of all valid claims, fees, costs, and other expenses, will be distributed to Habitat for Humanity as a *cy pres* distribution.

## C. Payment of Attorneys' Fees will Minimally Impact Claimants.

The Settlement Agreement contains no clear sailing provision. In fact, Defendants specifically reserved the right to object to any motion for payment of attorneys' fees and expense, or service award. SA ¶ 104. On August 22, 2024, Class Counsel applied for an award of attorneys' fees of $2,139,194.45, expenses of $160,805.55, and an aggregate service award of $35,000 to be distributed among the

seven Class Representatives. ECF No. 152. Defendant objected on September 5, 2024. ECF No. 153. As discussed above, Class Member recoveries will be reduced minimally or not at all to pay for attorneys' fees and costs. Class Members had the opportunity to review and comment on or object to the fee petition as provided for in Fed. R. Civ. P. 23(h) and not one objected to or opposed Class Counsel's motion.

## V. <u>LEGAL STANDARD</u>

To grant final approval of a class action settlement, the Court must determine that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). The 2018 amendments to Rule 23 make clear that the Court should focus "on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e)(2), 2018 Adv. Cmt. Notes. Accordingly, Plaintiffs analyze the new Rule 23(e)(2) and rely on case law interpreting the Eleventh Circuit's *Bennett* factors, which are substantially similar.[2] *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020) ("many [*Bennett*] considerations overlap those found in Rule 23(e)(2)").

---

[2] The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

## VI. <u>ARGUMENT</u>

### A. The Settlement Satisfies the Criteria for Final Approval.

Rule 23(e)(2) states that a district court should approve a proposed settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);
> (D) the proposal treats Class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement satisfies each of the criteria under Rule 23(e)(2). Therefore, the final approval of the proposed Settlement is appropriate.

### 1. Settlement Class Representatives and Counsel Have Adequately Represented the Settlement Class.

Rule 23(e)(2)(A) considers whether "the class representatives and class counsel have adequately represented the class." In evaluating Class Representatives' and Class Counsel's adequacy, courts consider whether Class Counsel and Plaintiffs "had an adequate information base" before negotiating and entering the settlement. *See* Rule 23(e)(2)(A) advisory committee's note to 2018 amendment. Courts thus consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

Class Counsel and Class Representatives have adequately represented the Class. Class Counsel zealously represented their clients' interests through vigorous litigation, and then settlement negotiations, over the course of three years. ECF No. 138-1 ¶¶ 7, 9-21; ECF No. 138-2 ¶¶ 10-25. Class Counsel defeated dispositive motions brought by each Defendant, conducted fulsome discovery to investigate the facts of the case, and retained appropriate experts to assist them in developing the claims and evaluating the defenses in the case. *Id*. The Class Representatives were likewise actively engaged in the litigation. ECF No. 138-1 ¶¶ 30-31; ECF No. 138-2 ¶¶ 33-34. They each provided relevant documents and materials, sat for depositions, and permitted inspection of their homes, where appropriate. *Id*.

In negotiating the Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of the case. ECF No. 138-1 ¶¶ 36-52; ECF No. 138-2 ¶¶ 3-4, 9, 27. Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and Defendants' defenses and engaged in extensive formal discovery, including reviewing thousands of pages of documents, taking or defending a total of 16 depositions, including taking Rule 30(b)(6) corporate representative depositions of the Defendants. ECF No. 138-1 ¶ 10; ECF No. 138-2 ¶¶ 10-15. Class Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the case and prepared counsel for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two Rule 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### 2. The Settlement is the Product of Good-Faith, Informed, and Arm's Length Negotiations.

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." And courts have noted that a class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and

reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. The Parties engaged in extensive, adversarial negotiations over several mediation sessions with an experienced retired federal judge from this District, Judge Duffey. ECF No. 138-1 ¶¶ 14-18; ECF No. 138-2 ¶¶ 18-21. A settlement process facilitated by a mediator weighs heavily in favor of approval. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."); Adv. Cmte. Note ("involvement of a neutral…mediator…in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). The 12-month-long settlement negotiation process was so adversarial that it appeared to break down in several instances and the Parties were on the brink of returning to litigation. This Settlement was achieved in a procedurally fair manner and there is absolutely no evidence of collusion even when a higher level of scrutiny is applied. *See Drazen v. Pinto*, 106 F.4th 1302, 1329 (11th Cir. 2024) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[p]rior to formal class

certification . . . agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest").

Based on this information the Court should conclude, as it did before, "that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations." ECF No. 149.

### 3. The Settlement Provides Adequate Relief to Class Members.

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate," considering several factors, including the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorneys' fees, and any other agreements between the parties. The replacement remedy and other monetary benefits of the Settlement are substantial and more than adequate.

The Settlement Agreement provides for a $3.8 million fund. As outlined in Section IV.C. above, even assuming all 12,302 claims are approved by the Settlement Administrator, the Class Members will receive an excellent outcome. After deducting attorneys' fees and expenses, service awards to Plaintiffs, and administrative costs from the settlement fund, all 11,660 Class Members who submitted valid replacement remedy claims will receive 100% of the cash value of their claim or replacement Water Heater Connectors as requested. Further, if all claims are approved, it is estimated that the 285 Class Members who claimed damages as a result of the Water Heater

Connectors will receive 78% of the amount they claimed, after the necessary pro rata reduction provided for in the Settlement Agreement, for a total payment of $701,050.

This represents an extraordinary recovery for Class Members. As a point of comparison, settlements that were certified in four other comparable plumbing defect cases permitted the recovery of significantly less than 78% of the claimed amount. *See Trabakoolas v. Watts Water Techs., Inc.*, Case No. 12-cv-01172 (N.D. Cal.), ECF No. 285 at page 12 (25% recovery of claimed amount); *Klug v. Watts Regulator Company*, 8:15-cv-00061 (D. Neb.), ECF No. 153 at page 4 (25% recovery of claimed amount); *In re: Zurn Pex Plumbing Products Liability Litigation*, MDL No. 1958, 08-md-01958 (D. Minn.), ECF No. 246 pages 6-7, ECF No. 253 (60% recovery of claimed amount); *Ajose et al. v. Interline Brands Inc.*, No. 3:14-cv-01707 (M.D. Tenn), ECF No. 263 at page 6 (30% recovery of claimed amount).

It is important to note that the recovery for Class Members who experienced a Water Heater Connector failure includes recovery for up to $100 for time spent dealing with the failure, which none of the other referenced settlements accounted for. Moreover, the estimated pro rata reduction of recovery to 78% of claimed amount is based on an unlikely scenario where all submitted claims are approved at their estimated claim amount. Plaintiffs anticipate that, through the claim vetting process, the number of claims will fall, making the percentage of recovery for valid claims

significantly higher. *See* Azari Decl. ¶ 29. All in all, it is inarguable that this represents an extraordinary recovery for Class Members.

### a. The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation.

Rule 23(e)(2)(C)(i) instructs courts to consider whether the costs, risks, and delay of trial and appeal militate toward a finding that a settlement provides adequate relief to the class. When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

While Plaintiffs and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Defendants, as well as the risks and delays inherent to litigation, especially complex class actions. Defendants raised numerous defenses to liability and damages, including claiming that the Water Heater Connector has a low failure rate. If litigation continued, Plaintiffs would expect Defendants to vigorously oppose class certification, challenge Plaintiffs' damages theories, and provide their own experts. Even if a class were certified and upheld on appeal, it would face the risk, expense, and delay of trial and potentially lengthy appellate process, further delaying any recovery for years. Plaintiffs and Class Counsel appropriately determined that the benefits of the Settlement reached

with Defendants outweigh the risks of continued litigation. *See George v. Academy Mort'g Corp. (UT)*, 369 F. Supp. 3d 1356, 1371 (N.D. Ga. 2019) (settlement was a "fair compromise" given risks and "certainty of substantial delay").

**b. The Distribution of Settlement Benefits is Effective.**

Rule 23(e)(2)(C)(ii) asks whether the methods of distribution and claims processing are effective. The Settlement provides relief for all foreseeable damage from this alleged product defect. Class Members received direct notice of the settlement claims process and benefits through the Court-approved Notice Plan (postcard, email, and/or by a robust targeted media campaign). Azari Decl. ¶ 7. The settlement claims process was designed to allow Class Members to replace their Water Heater Connectors, either by obtaining a replacement hose or by accepting a cash reimbursement, and to provide Class Members who suffered property damage with reimbursement for out-of-pocket repairs costs. Class Members had the ability to submit a Claim Form and supporting documents online or by mail. After reviewing a claim for completeness and eligibility, the Settlement Administrator will mail a check or send money electronically.

The claims process' success is evidenced by the significant number of claims (12,302), and the large number of interactions Class Members had with Epiq (1,325 calls and 132,797 unique visitor sessions to the Settlement website). *Id*. ¶¶ 24, 25. Therefore, the Settlement meets the considerations of Rule 23(e)(2)(C)(ii).

### c. Requested Service Awards and Attorneys' Fees Are Reasonable and not the Result of Collusion.

The Parties did not negotiate Class Counsel's attorney's fees or Plaintiffs' service awards before reaching an agreement on the terms of relief for the Class. ECF No. 138-1 ¶ 34; ECF No. 138-2 ¶ 23; *see Ingram*, 200 F.R.D. at 693 (finding settlement non-collusive where "the fee was negotiated separately from the rest of the settlement, and only after substantial components of the class settlement had been resolved"). There is no clear sailing provision and Defendants are free to oppose both fees and Service Awards. SA ¶ 104. Class Counsel requested reasonable attorney's fees and reimbursement of litigations costs of up to $2,300,000, and service awards totaling $35,000, which represents $5,000 per Plaintiff. ECF No. 138-1 ¶ 35; ECF No. 138-2 ¶ 36. Class Counsel filed separate papers in support of their fee and cost request (ECF No. 152), which RWC opposed (ECF No. 153).

### d. There are no Undisclosed Side Agreements.

There is no other agreement between the Parties that is required to be identified by Rule 23(e)(3), or any agreement made in connection with the Settlement that is not part of the Settlement. The Court can, therefore, determine the fairness and adequacy of the Parties' proposal for settlement by looking solely to the Settlement.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) considers "whether the apportionment of relief among Class Members take[s] appropriate account of differences among their claims," *see* Rule

23(e)(2)(D) advisory committee's note to 2018 amendment. The Settlement does so. Each Class Member can replace their Water Heater Connectors, either by choosing a replacement hose or cash reimbursement, and Class Members who suffered property damage were permitted to seek reimbursement for out-of-pocket repair costs. The Class Member claims and the conduct at issue are otherwise identical. There is no other pertinent difference for which to account.

As discussed above, Class Counsel requested Service Awards for the Class Representatives; however, no Plaintiff was promised or conditioned their representation on the expectation of that. ECF No. 138-1 ¶ 35; ECF No. 138-2 ¶ 36.

## B. The Settlement Class Should Be Certified.

In its Preliminary Approval Order, the Court found that it would likely be able to certify the Settlement Class. ECF No. 149 ¶¶ 8, 9. There has been no change that would affect the Court's previous conclusion. For the reasons set forth below, certification is appropriate under Rules 23(a) and (b)(3).

### 1. The Class Meets the Requirements of Rule 23(a).

#### a. The Class is Sufficiently Numerous.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a) is satisfied because, based on the number of Water Heater Connectors sold, the class size is estimated at 3.5 million consumers throughout the United States, (ECF No. 138-4 ¶¶ 4-6; ECF No. 138-3 ¶ 5), and joinder of all such persons is impracticable. *See* Fed. R.

Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### b.  There Are Common Questions of Law and Fact.

"To satisfy the commonality requirement, Plaintiffs must show that questions of law or fact are common to the entire class." *Melanie K. v. Horton*, 2015 WL 1308368, at *4 (N.D. Ga. Mar. 23, 2015). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1354 (11th Cir. 2009). Here, the central issues concern common questions of fact: *i.e.*, whether there is a common defect in the Water Heater Connector and Defendants' knowledge and omissions regarding the alleged defect. ECF No. 33 ¶ 126. These common questions will, in turn, generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### c.  The Class Representatives' Claims Are Typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are coextensive with those of the absent Class Members, such that the typicality requirement of Rule 23(a)(3) is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the

same event or pattern or practice and are based on the same legal theory"); *see also Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 682 (S.D. Fla. 2009) (plaintiff's claims are typical because he alleges same car defect as rest of class).

Here, Plaintiffs allege the existence of a common defect in the Water Heater Connector's rubber lining, and Plaintiffs each purchased at least one or owned/leased a home where one was used. ECF No. 33 ¶¶ 50-56, 70-100, 126-127. Therefore, Plaintiffs' claims are typical because they were subjected to the same conduct, suffered the same injuries and will equally benefit from the relief provided by the Settlement.

### d. The Class Representatives and Class Counsel Are More Than Adequate.

Adequacy under Rule 23(a)(4) considers (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001); *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000).

Plaintiffs and their counsel also satisfy the adequacy-of-representation requirement. Plaintiffs and absent Class Members have a coextensive interest in obtaining the relief offered by the Settlement, and absent Class Members have no diverging, antagonistic interests. Plaintiffs are familiar with the facts of this case and continued to protect the Class through the claims process, as they did throughout this litigation. Further, Plaintiffs' counsel are qualified and competent with experience in

prosecuting class actions, and devoted substantial time and resources to vigorously litigate this action from inception to the present day. They respectfully request confirmation of their appointment as Settlement Class Counsel under 23(g)(1).

### 2. The Class Meets the Requirements of Rule 23(b).

In this case, "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Common Issues of Law and Fact Predominate.

"Predominance" under Rule 23(b)(3) is satisfied where common issues have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016).

As the Court held in granting preliminary approval, "the questions of law or fact common to the Settlement Class predominate over individual questions." ECF No. 149 ¶ 9. Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Class Member. The evidence necessary to establish Plaintiffs' and the Class's claims is common: all would seek to prove the common defect in the Water

Heater Connectors, the Defendants' knowledge of the defect, and Defendants' failure to warn consumers. Further, the evidence to establish liability—e.g., marketing materials, product testing, internal emails, and product labels—would change little regardless of the number of plaintiffs in the class. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[I]f common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

### b. Class Treatment is Superior.

"Superiority" looks to the "relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. Under Rule 23(b)(3), the Court considers a "non exhaustive list of four factors" in making its superiority determination: "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Id*.

The first three factors show class treatment is superior: there is no other pending Water Heater Connector litigation, the damages sought by each Class Member are small relative to the cost of prosecuting an individual claim, and this Court has been competently handling this matter in a forum (Georgia) that is the home jurisdiction of both Defendants. The final factor, manageability, does not apply here. *Amchem Prods.*, 521 U.S. at 620 ("a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial."). The Court should affirm its prior holding that "class action litigation is superior to other available methods of the fair and efficient adjudication of this controversy." ECF No. 149 ¶ 9.

### C. Plaintiffs Complied with All Additional Approval Factors.

#### 1. Plaintiffs Provided Adequate Notice under Rule 23(b)(3) and Rule 23(c)(2)(B).

Rule 23(b)(3) class actions must satisfy the Rule 23(c)(2)'s notice provisions, and upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" The Notices and notice program conformed to the mandates of Rule 23 and due process. Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "The ultimate goal of giving notice is to enable Class members to make informed

decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or make claims." Adv. Cmt. Note R. 23.

Here, as outlined in Section III above, Plaintiffs implemented the notice plan that the Court stated:

> constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances to apprise members of the Settlement of the pendency of the Action, the effect of the proposed Settlement (including the releases contained therein), the anticipated Motion for Attorneys' Fees and Expenses and for Service Payments and their rights to participate, opt out, or object to any aspect of the proposed Settlement.

ECF No. 149 ¶ 9; *see generally* Azari Decl. This included delivery of direct email notice to 4,450,900 email addresses, postcard notice to 268,765 physical addresses, and a robust media campaign through targeted ads on social media (*Google Display Network*, *Facebook*, and *Instagram*). Azari Decl. ¶¶ 11,13, 20-23. The combined notice reached approximately 73% of the Settlement Class, *Id*. ¶ 31, and included the information required under Rule 23(c)(2)(B): the nature of the action, the class definition, the class claims, the option to enter an appearance through an attorney, that the Court will exclude anyone who timely asks, the time and manner for requesting exclusion and submitting objections, and the binding effect of a class judgment.

Class Member reaction to the Settlement was also overwhelmingly positive. The Settlement's straightforward claim process resulted in the submission of 12,302 claim forms, including 11,660 claims for replacement of purchased Water Heater

Connectors. By way of comparison, counsel for RWC represented to the Court at the preliminary approval hearing that in similar cases they received, on average, 800 claims for hose replacements. *See* ECF No. 141 at 121:9-18. Thus far only one valid opt-out has been received, and only one Class Member objected to the Settlement.[3] *See* Azari Decl. ¶¶ 20-21; ECF No. 155. Thus far no Class Member has objected to the requested attorneys' fees and costs or Class Representative awards.

Hence, the notice process was adequate under Rule 23(c)(2).

### 2. Response of Class Members to the Settlement.

Objections to proposed class settlements are governed by the procedures set forth in Fed. R. Civ. P. 23(e)(5). The deadline to request exclusion from, or object to, the Settlement is September 21, 2024, and the Settlement Administrator's final report is due October 4, 2024. Accordingly, Plaintiffs will address the substance of any objections in their reply in further support of this Motion.

However, out of some three to four million potential Class Members, only one has so far filed a timely objection. It is worth noting that a "miniscule number of objectors in comparison to the class size is entitled to significant weight in the final approval analysis." *In re Equifax*, 2020 WL 256132, at *10 (388 objections in 147-million-person class); s*ee also In re Home Depot, Inc., Customer Data Sec. Breach*

---

[3] A second objection was received; however, the objector did not know and is incapable of determining if they had in the past purchased a Water Heater Connector. The individual objected on that basis. ECF No. 154.

*Litig.*, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (five timely objections out of tens of millions of class members supports approval).

Thousands of Class Members made claims, contacted the Settlement Administrator, and visited the Settlement website. This positive reaction confirms the strength of the Settlement and is entitled to significant weight.

## VII. <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court: (1) grant final approval of the proposed Settlement; (2) certify the Settlement Class; (3) find that Notice to the Class was directed in a reasonable manner; (4) reserve jurisdiction with respect to implementation and enforcement of the terms of the Settlement; and (5) appoint Plaintiffs as Class Representatives and appoint Tina Wolfson of Ahdoot Wolfson, PC, and Stephanie A. Casey of Colson Hicks Eidson PA, as class counsel.

DATED: September 11, 2024      Respectfully submitted,

*/s/ Christopher E. Stiner*

Christopher E. Stiner
California Bar No. 276033
cstiner@adhootwolfsom.com
Tina Wolfson
California Bar No. 174806
twolfson@adhootwolfsom.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111

Facsimile: (310) 474-8585

Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Aziza F. Elayan
Florida Bar No. 92736
aziza@colson.com
Sabrina Saieh
Florida Bar No. 125290
sabrina@colson.com
**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

Andrea Hirsch (GA Bar No. 666557)
andrea@thehirschlawfirm.com
**THE HIRSCH LAW FIRM**
5256 Peachtree Road, Suite 195D
Atlanta, Georgia 30341
Telephone: 404-487-6552
Facsimile: 678-541-9356

## CERTIFICATE OF RULE 5.1(C) COMPLIANCE

I hereby certify that this document was prepared with Times New Roman 14-point font, one of the fonts and type sizes approved by Local Rule 5.1(c).

*/s/ Christopher E. Stiner*
Christopher Stiner


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Christopher E. Stiner*
Christopher Stiner