IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENE B. ELDER, *et al.*, individually    :
and on behalf of all others similarly    :
situated,    :
   :
     Plaintiffs,    :
   :
v.    :      CIVIL ACTION NO.
   :      1:20-cv-1596-AT
   :
RELIANCE WORLDWIDE    :
CORPORATION, a Delaware    :
Corporation; and HOME DEPOT    :
U.S.A., INC., a Delaware    :
Corporation,    :
   :
     Defendants.    :

## **ORDER**

This matter presents a case study in contemporary class action challenges. Plaintiffs seek reimbursement for allegedly defective Water Heater Connectors and for the associated property damage experienced by consumers — including leaks, water damage, and a buildup of rubber flakes and "tar-like sludge" in their water. In June 2023, the parties agreed to settle. But in administrating the settlement, the settlement administrator and Class Counsel have found themselves in something of a catch-22. In recent years, class action litigators have observed a significant uptick in fraudulent claims, facilitated by online claim submission forms. In response, the settlement administrator and Class Counsel implemented rigorous screening processes for claims in the instant settlement — so rigorous that only a

small fraction of potential valid claims have actually been filed or survived. Over the last ten months, the Court repeatedly expressed concern that the claim submission process might be a barrier to entry for potential claimants, especially given the low value of each individual claim. Specifically, the volume of documentation required to support a valid claim appeared arduous and even infeasible for some potential claimants, whose Water Heater Connectors may have failed years ago.

As this settlement comes to its final approval, the Court's concerns have come to fruition. Of the 12,310 settlement claims received, a mere 4,600 were approved. This relatively low number — of more than 1.7 million potential class members identified by the parties — is undoubtedly not what Class Counsel originally anticipated. That reality does not dilute the efficacy or significance of the proposed Settlement Agreement. It does, however, complicate the Court's review and consideration of Class Counsel's fee petition. In approving the Settlement Agreement and awarding attorneys' fees, the Court attempts to balance the importance of fairly compensating Class Counsel with the size of the benefit actually conferred upon the class and the relatively small number of claimants.

## I.    Background

This matter is now before the Court on Plaintiffs' Motion for Final Approval of Class Settlement [Doc. 156] and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to Class Representatives [Doc. 152]. Plaintiffs, individually and on behalf of the proposed Settlement Class, and Defendants entered into an

Amended Class Action Settlement Agreement and Release ("Settlement Agreement") that, if approved, resolves this litigation. (Doc. 147).

The proposed Settlement Class is defined as a nationwide class of all persons and entities who purchased for direct consumption or use, and not for resale, a Water Heater Connector or who own, owned, lease, or leased a residence or other structure during the time that such residence or structure contained a Water Heater Connector. "Water Heater Connector" means a braided stainless steel supply line containing an EPDM hose liner distributed by Reliance Worldwide Corporation and identified by Part Numbers beginning with "U3068FLEX" or "U3088FLEX." Excluded from the Class are: anyone who has already resolved their Water Heater Connector claims with any Released Party through settlement or final judgment; the Defendants and their affiliates, but not their individual employees; anyone who purchased a Water Heater Connector solely for resale; anyone who already received a refund and/or replacement for their purchase; the presiding District Judge in this action and her immediate family; and anyone who timely opts out.

On April 23, 2024, the Court granted preliminary approval of the Settlement, directed notice to the Class, and scheduled a Final Approval Hearing. (Doc. 149). Notice was sent to the Class via the Court-approved notice program. Direct email notice and/or postcard notice was delivered to 1,737,206 of the 1,756,855 unique class members who were identified by Home Depot. (Supplemental Declaration of Cameron R. Azari, Esq ("Azari Suppl. Decl."), Doc. 158 ¶ 15). Additional notice was provided through targeted ads on social media

(Google Display Network, Facebook, and Instagram) and a website was set up for class members to submit claims and obtain information about the Settlement Agreement. Epiq, the settlement administrator, fielded over 1,370 calls and at least 133,469 individuals visited the Settlement website. (*Id.* ¶¶ 16–19).

At the close of the Claims Period on August 21, 2024, the settlement administrator had received 12,308 Claim Forms (11,945 online and 363 paper). Of the claims received, 5,620 online claims were denied by the settlement administrator because they were determined to have significant indicia of fraud, and 25 claims were duplicative or were withdrawn. Of the remaining 6,663 claim forms, 1,536 were substantiated as complete/legitimate and 5,127 were denied as deficient. (*Id.* ¶ 22). After the Court expressed its concern over the high rate of denials, the settlement administrator approved roughly an additional 3,040 claims that were tied to UniqueIDs (*i.e.*, an identified purchase). (Transcript of Nov. 4, 2024 Teleconference ("Nov. 4 Tr."), Doc. 174 p. 5:8–10). Thus, in total, roughly 4,600 claims were approved. Finally, one valid request for exclusion and two objections were received by the settlement administrator as of the relevant deadline, September 21, 2024. (Azari Suppl. Decl. ¶ 21).

For the reasons set forth below, the Court **GRANTS IN PART** Plaintiffs' Motion for Final Approval of Class Settlement [Doc. 156], with the exception of its requested attorneys' fees. Plaintiffs seek an award of attorneys' fees in the amount of $2,139,194.45; reimbursement of expenses in the amount of $160,805.55; and approval of a service award for each Settlement Class Representative in the amount

of $5,000 (total of $35,000). For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to Class Representatives [Doc. 152].

## II.    Class Certification and Settlement Approval

Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b). Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court analyzed Rule 23(a)'s requirements in its Preliminary Approval Order and finds no reason to disturb its earlier conclusions. (Doc. 149 ¶ 8). First, the class is sufficiently numerous, comprising up to 3.5 million individuals throughout the United States. (Mot. for Final Settlement, Doc. 156 at 25). Joinder of all class members is thus impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). Second, the central issues in this case concern common questions of fact: whether there is a common defect in the Water Heater Connector and Defendants' knowledge and alleged omissions regarding such a defect. *See* Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus.*,

*Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982))). Third, the named Plaintiffs' claims are coextensive with those of the absent class members, such that the typicality requirement of Rule 23(a)(3) is satisfied. *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Plaintiffs allege the existence of a common defect in the Water Heater Connector's rubber lining, and that each Plaintiff purchased a Water Heater Connector or owned or leased a home in which the Water Heater Connector was used. The absent Class Members were subjected to the same conduct and claim to have suffered from the same defect injuries. Additionally, the defective Water Heater Connectors caused damages in the homes of some of the class members. Fourth, Plaintiffs and their counsel satisfy the adequacy of representation requirement under Rule 23(a)(4). Plaintiffs are represented by qualified and competent counsel with experience prosecuting class actions, and Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Settlement Class throughout this litigation.

The Settlement Class also satisfies Rule 23(b)(3) because the common questions of fact and law predominate, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Court found as such in its preliminary approval of the Settlement Agreement. (Doc. 149 ¶ 9). The evidence necessary to establish Plaintiffs' claims is common to the Class Representatives and other members of the Class: they would all seek to prove that

the Water Heater Connectors have a common defect, Defendants knew of the defect, and Defendants omitted or failed to warn consumers of the defect. Further, the evidence to establish liability would change little regardless of the number of plaintiffs in the class. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). And, a class action is the preferred mechanism to litigate this matter because the damages sought by each class member are small relative to the cost of prosecuting an individual claim, and because this Court has been handling this matter in the home jurisdiction (N.D. Ga.) of both Defendants. *See Klay*, 382 F.3d at 1269.

Additionally, the Court must determine that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e)(2), which states that a district court should approve a proposed settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). When a settlement is negotiated "[p]rior to formal class certification . . . such agreements must withstand an even higher level of scrutiny

7

for evidence of collusion or other conflicts of interest." *Drazen v. Pinto*, 106 F.4th 1302, 1329 (11th Cir. 2024) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

In preliminarily approving the Settlement Agreement, the Court concluded that "it [would] likely be able to approve the proposed Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate under Rule 23(e)." (Doc. 149 ¶ 2). Seeing no reason or meaningful objections that might disturb that conclusion, the Court finds that the proposed Settlement satisfies each of the criteria under Rule 23(e)(2). First, Plaintiffs and Class Counsel vigorously represented the Class through litigation, and then settlement negotiations, over the course of several years. (*See* Declaration of Tina Wolfson ("Wolfson Decl."), Doc. 138-1 ¶¶ 7, 9–21; Declaration of Stephanie Casey ("Casey Decl."), Doc. 138-2 ¶¶ 10–25). Second, the Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys who engaged in adversarial discussions over several mediation sessions with an experienced retired federal judge from this District, the Honorable William Duffey. *See* Fed. R. Civ. P. 23(e)(2)(B); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator[] lends further support to the absence of collusion."). In short, the Settlement Agreement was achieved in a procedurally sound manner.

Third, the Settlement Agreement provides adequate relief to the class members, as required under Rule 23(e)(2)(C). Under the Settlement Agreement,

8

each class member can receive up to two replacement Water Heater Connectors, or a cash reimbursement of $15 per replacement Water Heater Connector (up to $30 per household or structure). (Settlement Agreement, Doc. 147 ¶¶ 38, 115). Class members with proof of property damage resulting from a failed Water Heater Connector will also be reimbursed for that property damage. (*Id.* ¶¶ 15, 116). The relief provided for the Class is particularly strong considering the costs, risk, and delay of trial and appeal. *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1371 (N.D. Ga. 2019) (settlement was a "fair compromise" given risks and "certainty of substantial delay"). The Court further finds that the methods of distribution and claims processing — including direct notice of the settlement process by postcard, email, and social media as well as provision of the option for class members to submit a Claims Form either online or by mail — were sufficiently effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). Additionally, the Court required that the claims administrator in this matter take additional measures to ensure the fairness of the claims submission and review process.  (*See, e.g.*, Docs. 159; 167; 168; 169; 170). There are also no undisclosed side agreements between the Parties, Fed. R. Civ. P. 23(e)(3), and the Settlement Agreement treats class members equitably, Fed. R. Civ. P. 23(e)(2)(D).

Finally, the Court finds that notice was given to class members in the manner approved by the Court in its Preliminary Approval Order (Doc. 149), and that the form and content of that Notice, and the procedures for dissemination thereof,

afforded adequate protections to class members to satisfy the requirements of Rule 23(e) and due process.

Two class members submitted objections to the Settlement Agreement, one based on safety concerns and another based on the claim filing requirements. (Objection of Robert Peterson ("Peterson Obj."), Doc. 154; Objection of Ronald Lucero ("Lucero Obj."), Doc. 155). The Court further heard Mr. Lucero's objections at an October 21, 2024 teleconference. (Transcript of Oct. 21, 2024 Teleconference ("Oct. 21 Tr."), Doc. 170 pp. 4:14–5:21). The Court acknowledges these understandable concerns. Ultimately, however, they do not undermine the fairness of the Settlement Agreement or the adequacy of the relief it provides for Settlement Class Members.

The Court has scrutinized the Settlement together with all exhibits and attachments thereto and, having considered Plaintiffs' Motion, the record in this matter, and the briefs and arguments of counsel, finds that there is good cause and more than sufficient grounds to **GRANT** the Motion for Final Approval of Class Settlement [Doc. 156].

## III.   Attorneys' Fees, Costs, and Service Awards

### A.   Attorneys' Fees

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). A district court "has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning." *Waters v. Int'l Precious Metals Corp.*, 190

F.3d 1291, 1293 (11th Cir. 1999) (quoting *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1184 (11th Cir. 1993)). Where, as here, the settlement establishes a common fund, a fee award is "based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("*Camden I*"). A court has substantial discretion in determining the appropriate fee percentage. *Camden I*, 946 F.2d at 774 ("There is no hard and fast rule . . . because the amount of any fee must be determined upon the facts of each case"). "The majority of common fund fee awards fall between 20% to 30% of the fund." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1281 (11th Cir. 2021) (quoting *Camden I*, 946 F.2d at 774–75). Between 2009 and 2013, the average fee award in Eleventh Circuit common fund cases was 30%. *See* William Rubenstein, *Newberg & Rubenstein on Class Actions* § 15:83 (6th ed. 2024). "[A]n upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I*, 946 F.2d at 775; *accord In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("[C]ourts in this Circuit and elsewhere have awarded fees in the 20%–50% range in class actions.").

Here, the Settlement Agreement creates a common fund in the amount of $3,800,000, which covers claims for cash reimbursement and property damage; notice and administration costs; and attorneys' fees and costs. The settlement also provides class members with the choice of obtaining up to two replacement Water Heater Connectors, the cost of which will not come out of the common fund.

(Settlement Agreement, Doc. 147 ¶¶ 38, 47). Roughly $142,240 will be distributed among class members — approximately $32,130 of that will be expended for replacement Water Heater Connectors, which is not drawn from the common fund, and approximately $110,210, drawn from the common fund, to cover valid reimbursement and property damage claims. (*See* Defs.' Resp. to Pls.' Suppl. Br. ISO Mot. for Attys' Fees, Expenses, and Service Awards to Class Reps. ("Defs.' Resp. to Suppl. Br."), Doc. 181 at 3 (reflecting most recent numbers)).

Plaintiffs contend that their fee request for $2,139,194.45 should be measured against the value of the potential benefit to the class, namely the $105 million it would cost to replace each of the seven million covered Water Heater Connectors still in circulation. (*See* Pls.' Mot. for Attorneys' Fees, Expenses, and Service Awards to Class Reps. ("Pls.' Fee Mot."), Doc. 152 at 17, 27–28). It is true that common fund fee awards are "properly calculated as a percentage of benefits made available to the class." *Carroll v. Macy's*, Inc., 2:18-cv-1060, 2020 WL 3037067, at *8 n.11 (N.D. Ala. June 5, 2020). But it is unreasonable for parties to base their fee requests on a hypothetical figure of recovery — one proffered without expert valuation of the figure's reasonableness and after the close of the claims period, where the benefit actually conferred upon the class is already definitively known. The case law relied upon by Plaintiffs also does not support the notion that attorneys' fees should be based on a hypothetical valuation.[1] *See, e.g.*, *Carroll*,

---

[1] As Defendants point out, many of the cases relied upon by Plaintiffs also feature either reversionary funds or separately negotiated fee arrangements, both

2020 WL 3037067 at *9 (attorneys' fees comprised 24% of constructive common fund, *i.e.*, common fund plus attorneys' fees); *Waters*, 190 F.3d at 1295–96 (attorneys' fees evaluated against value of reversionary common fund, not money disbursed or hypothetical valuation).

In *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015), the settlement was valued by combining the value of credits to all current customers (1.8 million customers x $30) with the potential payments that were offered to all former covered customers (1.8 million customers x $20). *See id.* at *14. But the settlement in *Parsons* was more concretely valued because half of the settlement — the credits to current customers — was disbursed as an account credit without submission of a claim. In other words, Plaintiffs' proposed $105 million is flawed not because it seeks to value the total benefit conferred upon the class, but because it is so removed from the benefit actually conferred upon the class. "The way the settlement here is [framed, as $105 million] represents the benefit to the class if and only if 100% of class members were to submit and prevail on their claims, an event that all experienced counsel in this case knew was not going to happen." *Stanikzy v. Progressive Direct Ins. Co.*, No. 2:20-CV-118 BJR, 2022 WL 1801671 (W.D. Wash. June 2, 2022), *aff'd*, No. 22-35524, 2023 WL 4837875 (9th Cir. July 28, 2023).

---

distinguishing features from the instant case. (Defs.' Resp. to Suppl. Br., Doc. 181 at 2 –3).

At least one sister circuit has held that "courts must consider the actual or realistically anticipated benefit to the class—not the maximum or hypothetical amount—in assessing the value of a class action settlement." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 (9th Cir. 2023) (remanding settlement approval because fee award was unreasonably high and based on "theoretical [] settlement cap"); *see also Strong v. BellSouth Telecommc'ns, Inc.*, 137 F.3d 844, 852 (5th Cir. 1998) ("conclud[ing] that the district court acted within its discretion in considering the actual claims awarded" when settlement agreement "varied from a traditional common fund"). "This rule is especially important when the class redemption rate is low," as is the case here. *Lowery*, 75 F.4th at 992.

And, in fact, the relatively low rate of claims here underscores the difficulty in awarding Plaintiffs' full requested fee, which dwarfs the amount of money being disbursed to class members. The number of approved claims (roughly 4,600 of more than 12,000 submitted) was a point of concern for this Court throughout the process of approving the Settlement Agreement. Specifically, the Court flagged its concern   regarding the volume of documentation the parties have required to support a valid claim, given the likelihood that many claimants no longer have such documentation and/or will not take the time to find and submit such documentation for such a small reimbursement. This concern was borne out in one of the objections, which colorfully noted that "[i]t is as unreasonable to expect class members to retrieve these records as it would be to ask them to produce records of having purchased peaches years ago." (Peterson Obj., Doc. 154 at 1).

The parties and the settlement administrator have pointed out the increasingly high rate of fraud in online settlement processes — which can be mitigated through rigorous claim screening and which results in a lower rate of valid claims. (Nov. 4 Tr., Doc. 174 pp. 17:21–20:12). The Court takes this well-founded concern seriously. Nevertheless, the low claim rate and the total value of property damage to be covered are surprising to this Court, in contrast to the broad and serious damages asserted at the outset of this proceeding. (*See, e.g.*, First Amended Class Action Complaint ("FAC"), Doc. 33 ¶¶ 70–100) (describing class members who "had to clean and repair the screens for all of the faucets serving his home (including the kitchen faucet which supplied his drinking water) due to the buildup of rubber flakes and residue"; who "noticed leaking and that the filter displayed buildup of a 'tar-like sludge' substance"; and who "had to replace the filter, connector, and coffee machine, as well as his wood flooring, due to the water damage [and] had pieces of rubber flaking inside of the pipe, and in his water").

The Court does not doubt the caliber of Class Counsel's work. But the relatively low value of the benefits that class members will actually receive creates an inherent discomfort for the Court if it assesses attorneys' fees solely on the basis of the hypothetical recovery outlined by Plaintiffs' counsel. (*See, e.g.*, Pls.' Fee Mot., Doc. 152 at 3). To strike the appropriate balance, the Court will award a fee equal to 50% of the benefits actually conferred upon the class (the $3.8 million common fund + $32,130 in Water Heater Connectors distributed). The Eleventh Circuit has explicitly indicated that "an upper limit of 50% of the fund may be

15

stated as a general rule, although even larger percentages have been awarded."

*Camden I*, 946 F.2d at 774–75. Where, as here, "the requested fee exceeds 25%,

the court is instructed to apply the twelve *Johnson* factors." *Faught v. Am. Home*

*Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *see also Johnson v. Ga.*

*Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). Those factors are:

1. the time and labor required;
2. the novelty and difficulty of the questions;
3. the skill requisite to perform the legal service properly;
4. the preclusion of other employment by the attorney due to acceptance of the case;
5. the customary fee in the community;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or circumstances;
8. the amount involved and the results obtained;
9. the experience, reputation, and ability of the attorneys;
10. the undesirability of the case;
11. the nature and length of the professional relationship with the client;
12. awards in similar cases.

*Johnson*, 488 F.2d at 717–19. As described below, the *Johnson* factors well justify

this upward departure from the Circuit's standard percentage benchmark. *See In*

*re NetBank, Inc. Sec. Litig.*, No. 1:07-cv-2298-TCB, 2011 WL 13353222 (N.D. Ga.

Nov. 9, 2011) (collecting in-circuit district court cases where fee award was above

benchmark).

First, the litigation indisputably required substantial time and labor, with

Class Counsel spending over 4,400 hours litigating on behalf of the class. (Pls.' Fee

Mot., Doc. 152 at 23–24; *see also* Joint Decl. of Tina Wolfson & Stephanie Casey,

Doc. 152-1, Exs. A; B (reflecting hours records)). This investment of time was

reasonable and justified, in particular because "class action suits have a well-

deserved reputation as being most complex." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066, 2012 WL 12540344, at *3 (N.D. Ga. Oct. 26, 2012) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

This case was no exception. "Class Counsel left no proverbial stone unturned, developing a complete record and articulating all available cogent and reasonable arguments in favor of the Class's position" *Hillis v. Equifax Consumer Servs., Inc.*, No. 1:04-cv-3400-TCB, 2007 WL 1953464, at *17 (N.D. Ga. June 12, 2007). Class Counsel "engaged in extensive pre-suit investigation and testing of the product with the aid of their retained experts" followed by "extensive fact discovery." Specifically, they took or defended 16 depositions and organized in-person inspections at Plaintiffs' homes. They also engaged in a rigorous mediation and settlement process, including two in-person mediation conferences and numerous teleconferences with this Court to address the Court's concerns as to settlement administration. (Pls.' Fee Mot., Doc. 152 at 11–15; Docs. 165; 166; 172). At no juncture was this proceeding an easy one. Class Counsel's significant efforts thus support an upward departure from the benchmark percentage.

Second, Class Counsel have the requisite, specific experience and skills to successfully litigate this action. (Wolfson Decl., Doc. 138-1 ¶¶ 36–52; Casey Decl., Doc. 138-2 ¶¶ 2–9). In particular, Class Counsel's experience in comparable class action litigations provided a crucial perspective in litigating, settling, and administering settlement of this action. The knowledge that Class Counsel (and the settlement administrator) introduced regarding the uptick in fraudulent claims in

online-administered settlements was especially pivotal in contextualizing the relatively low claim rate and allowing the Court to evaluate the efficacy of the administration process.

Third, the risks presented by this proceeding justify the 50% fee awarded herein. Class Counsel took this case on a contingent basis, advanced the costs of litigation, and did not charge Plaintiffs by the hour as the litigation was proceeding. (Pls.' Fee Mot., Doc. 152 at 26–27). "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (*Id.* at 26 (quoting William Rubenstein, *Newberg & Rubenstein on Class Actions* § 15:87 (6th ed. 2024)). The substantial risk undertaken by Class Counsel supports the substantial fee award.

Most importantly, Class Counsel achieved an outcome under which 100% of the valid claims will be covered in full, including for property damage. (Pls.' Reply ISO Mot. for Attys' Fees, Expenses, and Service Awards to Class Reps., Doc. 157 at 6). "[T]he most critical factor [in assessing fees] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, where all valid claimants who filed claims were able to recover their full asserted damage, the results justify the upward departure from the benchmark.

A lodestar cross-check, though not required, *see, e.g.*, *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d at 1280 n.26, also confirms the reasonableness of the awarded fee. Class Counsel's total fees (*i.e.*, their lodestar)

was approximately $3.5 million, as of August 22, 2024. (Pls.' Fee Mot, Doc. 152 at 3). Their requested fee of $2.139 million represents a negative multiplier of .6 (or, in other words, 60% of their total fees expended). (*Id.*). In contrast, the awarded fee of $1,916,065.00 represents a negative multiplier of 0.54 (54% of their total fees expended).

Finally, the value of the common fund is sufficient such that payment of these fees and costs will not impact Claimants.

### Distribution of Common Fund

| | |
|---|---|
| **Cash Reimbursements** | $91,035.00 |
| **Property Damage Remedy** | $19,175.15 |
| **Settlement Administration** | $750,000.00 |
| **Attorneys' Fees** | $1,916,065.00 |
| **Costs** | $160,805.55 |
| **Service Awards** | $35,000.00 |
| **TOTAL OBLIGATIONS** | $2,972,080.70 |
| **CY PRES DISTRIBUTION** | $827,919.30 |

Of the $3.8 million common fund, roughly $110,210 will be drawn to cover valid cash reimbursement and property damage remedies in full; $750,000 will go to settlement administration costs; $160,805.55 will go to other litigation costs; and $35,000 will go to service awards. (Defs.' Resp. to Suppl. Br., Doc. 181 at 3–4; Pls.' Fee Mot, Doc. 152 at 4). Pursuant to the Settlement Agreement, the replacement remedy claims will also be paid in full, valued at roughly $32,130 and paid

separately from the common fund. (*Id.* at 3). Accounting for a fee award of $1,916,065.00, the Court approximates that $827,919.30 will still be left over in the common fund and will go to Habitat for Humanity as an agreed-upon *cy pres* distribution.[2] (Pls.' Fee Mot, Doc. 152 at 19). "In cases [such as this one] in which the full [common] fund is distributed to the class and/or to third parties via a *cy pres* distribution, there is near unanimity among the circuits [] that the percentage fee award should be calculated against the full value of the fund." *See* William Rubenstein, *Newberg & Rubenstein on Class Actions* § 15:7 (6th ed. 2024); *see also Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (approving *cy pres* distribution where no proration of claimants' recovery). This fee award — which represents 50% of the benefits actually conferred — is thus eminently reasonable.

### B.    Costs

The Court finds Class Counsel's requested reimbursement of $160,805.55 in expenses is reasonable and appropriate. Those costs were incurred for case related expenses, such as the creation and maintenance of an e-discovery platform; deposition costs, including videographer and transcription fees; expert fees; the mediator's fee; court filing fees; service fees for summonses to third parties; research; and document reproduction costs. This requested figure does not include

---

[2] Plaintiffs indicated at the Settlement Approval Hearing on December 16, 2024, that the settlement administrator was still processing a handful of appeals and improperly filed claims. The Court does not anticipate these claims will dramatically change the most recent figures submitted by the parties.

the settlement administration cost, currently estimated at roughly $750,000, which will be separately drawn from the common fund under the terms of the Settlement Agreement. (Defs.' Resp. to Suppl. Br., Doc. 181 at 4; Settlement Agreement, Doc. 147 ¶ 47). Class Counsel's request for reimbursement of expenses in the amount of $160,805.55 is **GRANTED**.

### C.    Service Awards

Plaintiffs request approval of service awards in the amount of $5,000 to each named Plaintiff for their services on behalf of the Settlement Class, which will amount to a total of $35,000. Defendants do not oppose this request. "As this Court, and other courts in the Eleventh Circuit have explained, state law governs the issue of Service Awards in diversity actions," and Georgia law allows for service awards to class representatives. *Tims v. LGE Cmty. Credit Union*, No. 1:15-cv-4279-TWT, 2023 WL 11915734, at *1 (N.D. Ga. Nov. 29, 2023). The Court finds the service awards are warranted and reasonable, and the aggregate service award of $35,000 is **GRANTED**.

## IV.  Conclusion

Accordingly, the Court orders, adjudges, finds, and decrees as follows:

1. The Court hereby **CERTIFIES** the Settlement Class and **GRANTS** the Motion for Final Approval of the Class Settlement [Doc. 156], subject to the modification of the attorney fee provisions contained herein and relatedly the *cy pres* amount to be awarded. The Court fully and finally approves the Settlement in the form contemplated by the Settlement Agreement (Doc.

21

147) and finds its terms to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23. The Court directs the consummation of the Settlement pursuant to the terms and conditions of the Settlement Agreement.

2. At his request, the individual who sought exclusion from the Settlement Class on a timely and proper basis is excluded. (Azari Suppl. Decl., Doc. 158 at 11).

3. The Court **CONFIRMS** the appointment of Tina Wolfson of Ahdoot Wolfson, PC, and Stephanie A. Casey of Colson Hicks Eidson PA, as Class Counsel.

4. The Court **CONFIRMS** the appointment of the Settlement Class Representatives named in the final Settlement Agreement. (Doc. 147 ¶ 8).

5. The Court hereby discharges the Released Claims as to the Released Parties, as those terms are used and defined in the Settlement Agreement. (Doc. 147 ¶¶ 33−34, 43, 96−103).

6. The Court hereby permanently bars the institution and prosecution by Settlement Class Members of any other action against the Released Parties in any court or other forum asserting any of the Released Claims, as those terms are used and defined in the final Settlement Agreement, except for those claims to enforce the Settlement Agreement. (Doc. 147 ¶¶ 33−34, 96− 103).

7. The Court further reserves and retains exclusive and continuing jurisdiction over the Settlement concerning the administration and enforcement of the Settlement Agreement and to effectuate its terms.

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to Class Representatives, as follows:

8. Class Counsel's request for $2,139,194.45 in attorneys' fees is **DENIED**. The Court instead **AWARDS** $1,916,065.00 in attorneys' fees to Class Counsel.

9. Class Counsel's request for reimbursement of expenses in the amount of $160,805.55 is **GRANTED**.

10. Plaintiffs' request for approval of a service award for each Settlement Class Representative in the amount of $5,000 (for a total of $35,000) is **GRANTED**.

Accordingly, the Clerk is directed to enter a separate judgment consistent with the terms of this Order pursuant to Fed. R. Civ. P. 58.

**IT IS SO ORDERED** this 28th day of January, 2025.

_____
**Honorable Amy Totenberg**
**United States District Judge**